STATE OF NORTH CAROLINA v. THOMAS PATRICK McNICHOLAS

No. 725A86

(Filed 30 June 1988)

1. **Criminal Law § 68; Rape and Allied Offenses § 4— hair comparison testimony —relevancy**

    Expert testimony that a hair found in a rape victim's pubic area was microscopically consistent with one belonging to defendant was relevant and admissible on the issue of whether the victim was sexually assaulted by defendant even though identity was not in question in this case. N.C.G.S. § 8C-1, Rule 401 (1986).

2. **Bills of Discovery § 6— hair analysis—discovery of laboratory report—failure to produce notes—testimony from notes after sanctions**

    Assuming arguendo that an SBI agent's notes concerning a microscopic hair analysis he conducted were discoverable and that the State should have produced them pursuant to defendant's discovery request when it produced the laboratory report, the trial court did not err in permitting the agent to testify concerning an aspect of the hair analysis contained in his notes but not revealed in the laboratory report where the court ordered the prosecutor to allow inspection of the agent's notes, granted defendant a recess to review the additional materials, and offered defendant an additional opportunity to cross-examine the agent about the notes. N.C.G.S. § 15A-903(e) (1983); N.C.G.S. § 15A-910 (1983).

3. **Rape and Allied Offenses § 5— sufficient evidence of vaginal intercourse**

    There was sufficient evidence that defendant engaged in vaginal intercourse with the victim to support his conviction of first degree rape where the victim, age 9, testified that defendant, age 31, laid her on the ground, took off her shorts and panties and "put his thing in mine," and a physician testified that there was bruising on the sides of the victim's labia and a small laceration

in the area of the fourchette and that this physical evidence was consistent with a penis having been forced through the victim's labia.

**4. Rape and Allied Offenses § 6.1— first degree rape—instruction on attempted rape not required**

Evidence in a first degree rape case that the victim told a physician that defendant "put his thing against her" did not require the trial court to instruct on the lesser included offense of attempted first degree rape where such statement, when read in context, was part of a description of a sequence of events which culminated in penetration.

**5. Constitutional Law § 34; Criminal Law § 26.5— first degree rape—indecent liberties—no double jeopardy**

Defendant's convictions of first degree rape under N.C.G.S. § 14-27.2(a)(1) and taking indecent liberties under N.C.G.S. § 14-202.1 did not violate the double jeopardy prohibitions of either the state or federal constitutions although they both arose out of the same act.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence entered by *Clark, J.,* at the 14 July 1986 Criminal Session of Superior Court, CUMBERLAND County, upon defendant's conviction of first degree rape. Defendant's petition to bypass the Court of Appeals on his appeal from a second judgment imposing a ten-year term of imprisonment upon his conviction of taking indecent liberties with children was allowed. Argued in the Supreme Court 11 November 1987.

*Lacy H. Thornburg, Attorney General, by Doris J. Holton, Assistant Attorney General, for the State.*

*Stephen C. Freedman for defendant appellant.*

EXUM, Chief Justice.

In this appeal defendant contends the trial court erred in: (1) admitting hair comparison analysis evidence; (2) denying his motion to dismiss the first degree rape charge for insufficient evidence; (3) failing to instruct the jury on the lesser-included offense of attempted first degree rape; and (4) denying his motion to arrest judgment on the indecent liberties charge. We find no error in the trial.

I.

Defendant was prosecuted for first degree rape under N.C. G.S. § 14-27.2(a)(1).* The state's evidence tended to show as follows:

On 30 July 1985 the victim, age nine, was returning to her home after visiting a friend. Defendant, age 31, bought her a drink at a nearby convenience store, led her across the street and took her into some woods where the ground was wet and sandy. Defendant then removed the victim's shorts and underpants and, according to victim's testimony, "put his thing in [hers]."

The victim left, went home and told her grandmother what had happened. Her grandmother took the victim to the Cape Fear Valley Medical Center, and on the way the victim saw the defendant and identified him as her assailant. After the victim identified defendant her father attempted to detain him until the police arrived. Before the police arrived defendant threatened the victim's father with a knife and said, "that was the best little stuff [I] ever had."

Nancy Carpenter, a registered nurse on duty at the medical center, was the first member of the medical profession to examine the victim. Nurse Carpenter collected evidence consisting of samples of the victim's vaginal fluids, saliva, blood, head hair and combings from the pubic area. She collected the victim's clothing, including panties, shorts, a shirt, socks and tennis shoes. She noted that the victim's vulva was very sandy and her anal area was red and swollen. The victim told Nurse Carpenter the defendant had "put his thing in mine. I bleed and it hurts. It got blood on his thing. It hurt." There was also sand in the victim's hair and ears and on her face and body.

Dr. Linda McAllister, an obstetrician and gynecologist, also examined the victim. The victim told Dr. McAllister a man had

---

* This statute defines first degree rape in pertinent part as follows:

(a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

(1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim
. . . .

tried to put "his thing" against her, she was on the ground, and she had tried to scream and break away. The man put his hand over her face and he was against her, it was hurting, and there was blood. Dr. McAllister found sand and dirt in the folds of the victim's genital area. A pelvic examination revealed bruising of the sides of the labia and a tear about one centimeter long in the fourchette, which is at the bottom of the entrance to the vagina. Dr. McAllister could see the tear without opening the victim's labia, but the tear did not bleed actively except when Dr. McAllister opened the labia. Dr. McAllister testified that in her professional opinion the skin would not have torn as it did unless it had been resisting some force; and the injury could have been caused by a penis being forced past the labia. Although the victim's hymen was intact, Dr. McAllister's opinion was that a penis could have gone between the labia without causing extensive laceration and without tearing the hymen.

D. J. Spittle, forensic serologist with the State Bureau of Investigation, analyzed the victim's vaginal smear. He testified it showed no evidence of semen and no such evidence was found on any of the victim's clothes. He found sand in her panties and a trace of blood in the crotch area of the panties.

Scott Worsham, forensic hair examiner for the State Bureau of Investigation, analyzed the pubic area combings taken from the victim. Over defendant's objection he testified the combings produced a short, caucasian pubic hair which he compared to a known pubic hair of the defendant. In Agent Worsham's professional opinion, this pubic hair could have come from the defendant. Agent Worsham also testified the pubic hair had a tag of human tissue at the follicular end, indicating that rather than having simply fallen out, the hair was detached under force or pressure.

Sergeant Maynard Bathke and Deputy Art Binder of the Cumberland County Sheriff's Department transported defendant to the law enforcement center. Deputy Binder testified that during the trip, defendant declared to the two men, "I didn't do anything that bad. Haven't you ever had any real young stuff? It is not that bad; you ought to try it." Defendant also said, "I am a sorry son of a bitch. I wouldn't blame you if you took that gun and blew my g-- d--- brains out. I wish you would."

Defendant's evidence tended to show as follows:

Defendant testified in his own behalf. He admitted he had been with the victim but denied having any sexual contact with her. Defendant testified he purchased a bottle of wine from the convenience store, crossed the street, urinated in the woods and sat down on a rock. He then saw the victim with her bicycle. She asked him what he was doing and he told her he was getting drunk. She laid her bicycle down, came up to him, and started to pour out his bottle of wine. He testified he was upset and grabbed her by the side of the pants, jerked her, threw her down and pulled her pants down. He dragged her across the ground toward the creek but "caught himself," collected his bottle of wine, and left the area. He testified he never took his own pants down or took out his penis and he never had sexual contact with her or intended to do so.

Dr. Wade Williams, a clinical psychologist whose expertise includes interviewing child victims of sexual abuse to determine the cause of abuse, testified that asking child victims leading questions interferes with the accuracy of their answers and may continue to have this effect in later statements made by such victims. In his opinion the victim in this case had been asked such questions by Nurse Carpenter. On cross-examination he admitted the use of such leading questions does not necessarily mean the victim's answers are untruthful.

II.

[1] In his first assignment of error defendant argues the trial court erred in allowing Agent Worsham to testify concerning the microscopic hair analysis. Defendant asserts the testimony is not relevant and should have been excluded. We disagree.

This Court has consistently held that expert testimony regarding hair comparison analysis is admissible to establish the identity of a perpetrator. *See State v. Pratt*, 306 N.C. 673, 295 S.E. 2d 462 (1982); *State v. Green*, 305 N.C. 463, 290 S.E. 2d 625 (1982); *State v. Barber*, 278 N.C. 268, 179 S.E. 2d 404 (1971). Defendant contends these cases stand for the proposition that evidence of hair comparison analysis is relevant *only* to establish the identity of the perpetrator when identity is in question. Since,

defendant argues, identity is not in question in this case, the evidence is irrelevant. This argument is without merit.

Under our rules of evidence, relevant evidence is broadly defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1986). The weight of the evidence is an issue for the jury. *State v. Green*, 305 N.C. 463, 290 S.E. 2d 625 (1982).

The hair comparison testimony is clearly relevant on the issue of whether the victim was sexually assaulted. That a hair belonging to someone other than the victim was found in her pubic area tends to show that the person from whom the hair came could have engaged in sexual contact with the victim. That the hair is microscopically consistent with one belonging to defendant supports the victim's testimony that defendant sexually assaulted her. It is merely another link in the chain of evidence presented by the state to establish that defendant raped the victim. It was, therefore, properly presented to the jury.

### III.

[2] Defendant next argues the trial court erred in allowing Agent Worsham to testify concerning an aspect of the hair analysis not revealed in the S.B.I. Laboratory Report.

Agent Worsham prepared the laboratory report and made notes concerning his observations. The notes, about which Agent Worsham was permitted to testify, referred to a tag of human tissue attached to the hair found in the pubic area of the victim. This fact was not contained in the laboratory report furnished defendant pursuant to his pretrial request for discovery. Neither the state nor defense counsel had access to Agent Worsham's notes before trial. Shortly before Agent Worsham testified, however, he told the prosecutor about the tag of skin he had observed on the hair.

On direct examination and over defendant's objection, Agent Worsham testified as follows:

A. . . . I found a short Caucasian pubic hair present. I then mounted that and then I took the known pubic hairs from

State v. McNicholas

. . . Thomas Patrick McNicholas . . . and I examined these hairs for the internal characteristics and compared them . . . . My comparison was that these two hairs . . . were microscopically consistent.

. . .

Q. Now, in examination of a hair, Mr. Worsham, can you tell whether the hair just fell out, or there was some force applied, or whether it was cut?

A. Yes, it is possible to make that determination when you examine the hair microscopically.

Q. Did you note anything about the pubic hair that you found in the pubic hair combings of [the victim] in that regard, sir?

A. Yes. . . . *I noted in my notes that his pubic hair had been exposed to a certain extent of external force* and this is noted because *on the root of the hair, there is tissue adhering to the root of the hair itself.* A hair that is in a normal growing cycle that has reached the end of the growing cycle and is ready to fall out will very gently be extracted from the skin and will take no tissue with it. However, a healthy growing hair with a bulbous root when pulled from the skin will oftentimes extract with it a piece of tissue . . . and that is what occurred in this case.

Q. Now, are you referring to a direct pull-out or the kind of force applied that might be rubbing against something else?

A. I couldn't make that determination, only that this hair was a healthy growing hair and there had been some type of force . . . applied so that it had been removed.

At the conclusion of this testimony, the trial court in the exercise of its discretion: (1) ordered the state to provide the defense with reports of all examinations or tests done by Agents Worsham and Spittle and any notes prepared by them; (2) offered defendant's attorney an opportunity to examine Agent Worsham again before the state rested its case; and (3) granted defendant a recess of one and one-half hours to afford him the opportunity to review the additional materials.

Defendant contends Agent Worsham's notes were discoverable, the prosecution acted in bad faith by not disclosing them and the only proper remedies are exclusion of this evidence or mistrial. Again we disagree.

Under N.C.G.S. § 15A-902(a) (1983) a party seeking discovery must first request in writing that the other party comply voluntarily with the discovery request. If the other party fails to comply the party seeking discovery may file a motion to compel discovery. "To the extent that discovery . . . is voluntarily made in response to a request, [it] is deemed to have been made under an order of the court . . . ." N.C.G.S. § 15A-902(b) (1983).

N.C.G.S. § 15A-904 (1983) sets forth the general rules governing what evidence is properly discoverable. Memoranda or other internal documents made by persons acting on behalf of the state in connection with an investigation or prosecution of a case are not subject to disclosure. N.C.G.S. § 15A-903(e) (1983) provides, as an exception to the general rule, that:

> Upon motion of a defendant, the court must order the prosecutor to provide a copy of or to permit the defendant to inspect . . . results or reports . . . of tests . . . or experiments made in connection with the case . . . within the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecutor . . . .

If at any time during the proceedings the court determines a party has failed to comply with this provision, it may: (1) order the party to permit the discovery or inspection; (2) grant a continuance or recess; (3) exclude the evidence; (4) declare a mistrial; (5) dismiss the charge with or without prejudice; or (6) order any other appropriate relief. N.C.G.S. § 15A-910 (1983). The various sanctions provided are both permissive and in the alternative. The choice of which sanction, if any, to impose is left to the sound discretion of the trial court. *State v. King*, 311 N.C. 603, 320 S.E. 2d 1 (1984).

In this case defendant wrote a letter, pursuant to N.C.G.S. § 15A-902(a), requesting that the district attorney voluntarily provide discovery. In response to defendant's letter the district attorney provided several items of discovery material, including a

copy of Agent Worsham's S.B.I. laboratory report. Under N.C.G.S. § 15A-902(b), this compliance with defendant's discovery request is deemed to have been made under court order.

Assuming arguendo that Agent Worsham's notes were discoverable and the state should have produced them pursuant to defendant's discovery request, the trial court cured the prosecutor's failure to comply by its generous imposition of three statutory sanctions. The trial court ordered the prosecutor to allow inspection of Agent Worsham's notes, granted defendant a recess and offered defendant an additional opportunity to cross-examine Agent Worsham about the notes.

We find no abuse of discretion in the trial court's response to the failure of the prosecutor to produce Agent Worsham's notes before trial. This assignment of error is overruled.

## IV.

[3] Defendant next argues the trial court erred by denying his motion at the close of all the evidence to dismiss the first degree rape charge for insufficient evidence. Defendant contends there was insufficient evidence to prove he engaged in vaginal intercourse with the victim. Again we disagree.

For a charge of first degree rape to withstand a motion to dismiss for insufficient evidence, there must be evidence, among other things, that defendant engaged in "vaginal intercourse" with the victim. N.C.G.S. § 14-27.2 (1986). The slightest penetration of the female sex organ by the male sex organ is sufficient to constitute vaginal intercourse within the meaning of the statute. *State v. Williams*, 314 N.C. 337, 333 S.E. 2d 381 (1982).

At trial, the victim, age 9, testified defendant, age 31, laid her on the ground, took off her shorts and panties and "put his thing in mine." Dr. McAllister testified there was bruising on the sides of the victim's labia and a small laceration in the area of the fourchette. In Dr. McAllister's expert opinion, this physical evidence was consistent with a penis having been forced through the victim's labia.

In ruling on a motion to dismiss for insufficient evidence the trial court must consider the evidence in the light most favorable to the state, which is entitled to every reasonable inference which

can be drawn from that evidence. *State v. Bell*, 311 N.C. 131, 138, 316 S.E. 2d 611, 615 (1984). There must, however, be substantial evidence of each essential element of the offense charged, together with evidence that defendant was the perpetrator of the offense. *State v. Gardner*, 311 N.C. 489, 510-11, 319 S.E. 2d 591, 605 (1984).

Applying these principles to the evidence before us and taking into account the definition of vaginal intercourse previously set out, we conclude there was substantial evidence that defendant engaged in vaginal intercourse with the victim. This assignment of error is overruled.

V.

[4] Defendant next argues the trial court erred by failing to instruct the jury on the lesser-included offense of attempted first degree rape. Defendant contends the testimony of Dr. McAllister is evidence from which the jury could find that defendant committed the lesser offense. We disagree.

At trial, Dr. McAllister testified as follows:

Q. When you saw [the victim] there at the emergency room at Cape Fear Valley Hospital, did you have any conversation with her?

A. . . . I didn't go into a lot of detail as to what had happened because I knew that she had already been questioned and would have to undergo further questions. . . . Just in summary, [she said] simply that a man had tried to put his "thing" . . . against her, that she was on the ground and she had tried to scream and to break away but that he had put his hand over her face and that he was against her, it was hurting, suddenly, there was blood and he stopped . . . .

An instruction on a lesser-included offense is warranted only when evidence is presented from which the jury could find that defendant committed the lesser offense. *State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976). "However, when all the evidence tends to show that the accused committed the crime with which he is charged and there is no evidence of guilt of a lesser-included offense, the court correctly refuses to charge on the unsupported lesser offense." *Id.* at 321, 230 S.E. 2d at 153.

Defendant contends the victim's statement to Dr. McAllister that he "put his thing against her" is sufficient to show that he did not penetrate the victim but that he merely *attempted* to rape her. Defendant's argument results from an incomplete reading of the testimony. When read in its entirety the testimony shows that the victim was describing the sequence of events in the order of their occurrence. The victim told Dr. McAllister that defendant placed his penis against her, she struggled to break away, he forced her to remain on the ground, it was hurting and "suddenly there was blood," and he stopped. When read in context this testimony shows a series of events which culminated in penetration. Further, the victim's statement is entirely consistent with her previous statements to Nurse Carpenter, who testified the victim had told her defendant had "put his thing in her thing."

All the state's evidence thus shows that defendant actually penetrated the victim; defendant's evidence is that he had no sexual contact whatever with the victim. Under these circumstances, no instruction on attempted rape ought be given. *See State v. Smith*, 315 N.C. 76, 337 S.E. 2d 833 (1985); *State v. Wood*, 311 N.C. 739, 319 S.E. 2d 247 (1984); *State v. Horner*, 310 N.C. 274, 311 S.E. 2d 281 (1984).

We conclude, therefore, that the trial court correctly refused to charge on the unsupported lesser offense of attempted first-degree rape.

## VI.

[5] Defendant next argues the trial court erred when it denied his motion to arrest judgment on his conviction of taking indecent liberties. Defendant contends his convictions of first-degree rape and indecent liberties, both arising out of the same act, constitute a violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 23 L.Ed. 2d 707 (1969), and Art. I, § 19, of our state constitution, *see State v. Birckhead*, 256 N.C. 494, 497, 124 S.E. 2d 838, 841 (1962). We disagree.

This issue is controlled by *State v. Etheridge*, 319 N.C. 34, 352 S.E. 2d 673 (1987). In *Etheridge*, defendant was convicted of

first-degree rape under N.C.G.S. § 14-27.2(a)(1) and taking inde-
cent liberties under N.C.G.S. § 14-202.1. In that case we conclud-
ed the two crimes, although arising out of the same act, were
legally separate and distinct and defendant's convictions did not
contravene state or federal constitutional prohibitions against
double jeopardy. *See also State v. Weaver*, 306 N.C. 629, 295 S.E.
2d 375 (1982) (indecent liberties under N.C.G.S. § 14-202.1 not a
lesser-included offense of first-degree rape under N.C.G.S. § 14-
27.2(a)(1) ).

Here defendant was convicted of first-degree rape under
N.C.G.S. § 14-27.2(a)(1) and taking indecent liberties under
N.C.G.S. § 14-202.1. Following our holding in *Etheridge*, we con-
clude these convictions do not violate the double jeopardy prohibi-
tions under either our state or the federal constitution.

In defendant's trial we find

No error.