STATE OF NORTH CAROLINA v. JESSE RAY HINTON

No. 887SC1263

(Filed 3 October 1989)

**1. Criminal Law § 62— evidence of stress evaluation test—curative instruction given—no prejudice**

Defendant was not entitled to a mistrial after a State's witness testified on direct examination that he had administered a psychological stress evaluation test to defendant and the court failed to give a curative instruction before excusing the jury for an overnight recess, since no evidence of any results was given at trial; no reference was made to the nature of the test or any questions which might have been asked; the trial judge, even in the absence of an objection or motion to strike, immediately cautioned the jury to disregard the witness's initial statement regarding the test and called the attorneys to the bench; in chambers the judge offered to re-caution the jury and to allow defense counsel to cross-examine the witness concerning the test; defense counsel preferred that a cautionary instruction be given at the end of trial along with the other instructions, which was done; and any prejudice which might have inured to defendant was removed by his cross-examination of the witness.

**2. Rape and Allied Offenses § 5— first degree sexual offense— use of croquet stick to force victim to submit—sufficiency of evidence**

There was no merit to defendant's contention that he hit the victim with a croquet stick because he was angry at the thought that she may have had sex with someone else rather than for the purpose of forcing her to have sex with him, and the trial court therefore did not err in submitting the charge of first degree sexual offense to the jury, since it was clear that defendant's beating of the victim with the croquet stick had the effect of putting the victim in fear for her life and thereby forcing her to submit to defendant.

**3. Rape and Allied Offenses § 5— second degree rape—attempted second degree rape—alternative instructions given—sufficiency of evidence**

There was sufficient evidence to support alternative jury instructions for both second degree rape and attempted sec-

ond degree rape, and the trial court did not err in refusing to arrest judgment on the verdict of attempted second degree rape where the prosecuting witness testified that she was raped by defendant in his bedroom, and at other points in her testimony described only an attempt to rape her, and the jury was free to believe some but not all of her testimony.

APPEAL by defendant from *Watts, Thomas S., Judge*. Judgment entered 9 June 1988 in Superior Court, NASH County. Heard in the Court of Appeals 23 August 1989.

Defendant Jesse Ray Hinton was charged with incest, rape, two counts of first-degree sexual offense, and two counts of sexual activity by a substitute parent. On 9 June 1988, after a jury trial, defendant was found not guilty of incest, and guilty of the following offenses: attempted second-degree rape, second-degree sexual offense, first-degree sexual offense, and two counts of sexual activity by a substitute parent. After a sentencing hearing defendant was sentenced to an active prison term of three years for attempted second-degree rape, twenty years for second-degree sexual offense, a life sentence for first-degree sexual offense, and nine years for the sexual activity by a substitute parent conviction. All sentences were consecutive except for the three-year attempted rape sentence which is to run concurrently with the nine-year sexual activity by a substitute parent sentence. Defendant gave notice of appeal to this Court in apt time.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Mable Y. Bullock, for the State.*

*Perry and Brown, by Cedric R. Perry, for defendant-appellant.*

JOHNSON, Judge.

Defendant's convictions arise out of events which allegedly occurred on 28 November 1987 between defendant and his then fourteen-year-old stepdaughter (hereinafter referred to as the "child," the "witness," or the "minor witness") who lived in the same residence in Nash County. The State's evidence, by way of the minor witness's testimony, tended to show the following: On the morning of 28 November, defendant's wife, who is also the natural mother of defendant's stepdaughter, had left for work when defendant awakened the child at about 10:00 a.m. and pulled her into his bedroom and put her on the bed.

Defendant proceeded to remove his clothes and also the child's night clothes. The child testified at trial that defendant attempted to have intercourse with her but that she pushed him away. Defendant then grabbed her by the throat and had oral sex with her. She also claimed that he also succeeded in having vaginal intercourse with her. During this time defendant asked the child whether she had ever had sex with anyone else.

Defendant and the child then went into different bathrooms and the child dressed herself and sat on the bed in her own room. Defendant entered holding a croquet stick in his hand. Defendant hit the child on the head and back with the stick eight times. He repeated his question to the child as to whether she had had prior sexual activity. Defendant undressed the child and forced her to have oral sex with him again. The witness testified that the defendant then stated that "[h]e was going to kill me and if I tried to put him in jail one more time, after he got out he was going to come back and kill me."

Defendant later voluntarily gave a statement to a deputy sheriff that he had molested the child over a period of several years. The child testified at trial to similar occurrences.

Defendant's trial testimony concerning the 28 November incidents was that he was approached by his stepdaughter who was wearing only underwear, and that she promised to have oral sex with him if defendant would persuade his wife to allow the child to visit a certain friend. Defendant stated that the child performed oral sex on him, and he "reached down and felt of her." Defendant denied ever having intercourse with the child. He also stated that he asked the child if she had had a prior sexual experience and became angry when she admitted to one. Defendant testified that he hit the child with the croquet stick because he was enraged about her prior sexual experience.

[1] By his first Assignment of Error, defendant contends that the trial court committed reversible error by denying his motion for a mistrial after State's witness, Detective Larry Antill, testified on direct that he had administered a psychological stress evaluation or "PSE" test to defendant, and the court failed to give a curative instruction before excusing the jury for an overnight recess.

The following reference to the PSE test occurred after Detective Antill had just read a statement which the minor witness had

given to him in 1986 in which she claimed defendant had molested her. This statement, which the child later recanted, was introduced for the purpose of showing defendant's state of mind.

Q. And subsequent to that, did [the minor witness] come in and take those things back?

A. Yes, sir, she did.

Q. Did she ever tell you why she had done that?

A. Yes, sir, she did.

Q. What did she say? Why did she say she did?

A. Mr. Hinton was also questioned and brought in and took a PSE test . . .

THE COURT: This statement, ladies and gentlemen of the jury, don't consider that statement by the witness.

Let me see you all up here a minute.

(Both counsel approached the bench and conferred with the court out of the hearing of the jury.)

THE COURT: Ask you [sic] next question.

Q. Did you administer any tests to the defendant?

A. I did not.

THE COURT: You're referring to 1986 now?

A. Yes, sir.

Q. Did you yourself offer any tests to the defendant?

A. I offered the tests to the defendant.

Mr. Perry [Defense counsel]: I didn't understand the question or the answer. What was your answer?

A. I offered it to the defendant.

THE COURT: Members of the jury, step to your room for just a few minutes. Please don't talk about this case while you're out there and I'll send for you as soon as I can.

Defendant cites us to cases in which reference was made to polygraph tests. Defendant is correct that polygraph evidence is

inadmissible in any trial in North Carolina even if the parties stipulate to its admissibility. *State v. Grier*, 307 N.C. 628, 300 S.E.2d 351 (1983). Our Supreme Court has also stated, however, that not every reference to a polygraph test will necessarily result in prejudicial error. *State v. Kirkman*, 293 N.C. 447, 238 S.E.2d 456 (1977); *State v. Montgomery*, 291 N.C. 235, 229 S.E.2d 904 (1976). The question of whether to grant a mistrial is addressed to the sound discretion of the trial court, and is proper "only when there are such serious improprieties as to make it impossible to attain a fair and impartial verdict." *State v. Harris*, 323 N.C. 112, 125, 371 S.E.2d 689, 697 (1988). The references in the instant case to the PSE test did not deprive defendant of a fair and impartial verdict. We uphold the court's denial of defendant's motion for mistrial.

No evidence of any results was given at trial. Also, no reference was made to the nature of the test or any questions which might have been asked. *Montgomery, supra.* Further, the able trial judge, even in the absence of an objection or motion to strike, immediately cautioned the jury to disregard the witness's initial statement regarding the test and called the attorneys to the bench. In chambers the judge offered to recaution the jury and to allow defense counsel to cross-examine the witness concerning the PSE test. Defense counsel preferred that a cautionary instruction be given at the end of trial along with the other instructions. This request was granted.

Significantly, any prejudice which might have inured to defendant was removed by his cross-examination of the witness. Defense counsel elicited from Detective Antill that defendant took a PSE test in 1986 in regard to allegations of molestation made by the minor witness, and that when the child learned that defendant had taken the test, she refused to take the test herself. The result of this may well have been to damage the child's credibility and actually improve defendant's position. At any rate it cured any possible prejudice to defendant. This assignment is overruled.

[2] By his second Assignment of Error, defendant argues that the court erred in denying his motion to dismiss the first-degree sexual offense charge which related to events in the minor witness's bedroom because, he claims, only second-degree sexual offense, at best, is supported by the evidence.

(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

. . . .

(2) With another person by force and against the will of the other person, and:

a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon; . . .

G.S. sec. 14-27.4(a).

Specifically, defendant contends that the reason he struck the victim with the croquet stick in her bedroom was because he was angry with her for having sex with someone else, rather than for the purpose of forcing her to have sex with him. The argument is that defendant employed the weapon for a purpose other than to force the child to engage in sexual activity with him and that therefore the first-degree sexual offense statute does not apply. We disagree.

Our Supreme Court, in analyzing G.S. sec. 14-27.4(a)(2)(a), has observed that the first-degree rape statute, G.S. sec. 14-27.2, uses identical language to G.S. sec. 14-27.4(a)(2)(a). *State v. Whittington*, 318 N.C. 114, 347 S.E.2d 403 (1986). Therefore, in an extensive analysis of the statutory phrase in G.S. sec. 14-27.4(a)(2)(a), "[e]mploys or displays a dangerous or deadly weapon," the Court in *Whittington* relied on analysis of the same phrase in first-degree rape cases. One such case cited in *Whittington, State v. Sturdivant*, 304 N.C. 293, 283 S.E.2d 719 (1981), stated in footnote 1, the following:

We perceive that the Legislature intended to make implicit in G.S. 14-27.2 a matter of ordinary common sense: that the use of a deadly weapon, in any manner, in the course of a rape offense, always has some tendency to assist, if not entirely enable, the perpetrator to accomplish his evil design upon the victim, who is usually unarmed.

*Sturdivant*, 304 N.C. at 299, 283 S.E.2d at 725.

Applying this logic to the instant case, we find ample evidence to support the jury's finding that defendant "[e]mploy[ed] or display[ed] a dangerous or deadly weapon" in the commission of the first-degree sexual offense. The evidence showed that defendant

**STATE v. HINTON**

[95 N.C. App. 683 (1989)]

was holding the croquet stick up in the air when he entered the child's bedroom and began hitting her. While in the process of hitting the child, he asked her if she had had sex with someone else. Defendant then forced the child to have oral sex with him.

It is clear that defendant's use of the croquet stick had the effect of putting the victim in fear for her life and thereby forcing her to submit to the defendant. The fact that defendant initially became angry at the thought that the victim may have engaged in sexual activity with someone else is of no significance. Defendant's use of the stick enabled him to perpetrate the crime and the trial judge properly submitted the charge of first-degree sexual offense to the jury. This assignment is overruled.

[3] Last, defendant contends that the court erred in submitting the charge of attempted second-degree rape to the jury and not arresting judgment on the verdict of guilty of attempted second-degree rape. Defendant argues that all the evidence showed either that a rape occurred (the child's testimony) or it did not (defendant's testimony), and that there was no evidence of attempted rape.

We first note that "[n]o party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection." Rule 10(b)(2), N.C. Rules App. Proc. (as amended 1981). In the jury charge conference, defense counsel, far from objecting to the inclusion of an instruction on attempted rape, gave the following response to the court's query:

[The Court:]

Now on 3453, that will be the second degree rape. Do you suggest any lessor included on that, Mr. Perry?

Mr. Perry [Defense counsel]: Based on the testimony, I think that would be appropriate.

THE COURT: What do you say, Mr. Caudle?

Mr. Caudle [State's Attorney]: There is some evidence of attempted.

THE COURT: There is some evidence that if the act was not consummated there was, at least, an attempt. So on that one, 3453, the verdict form would be guilty of second degree rape;

or, number 2, guilty of attempted second degree rape or, number 3, not guilty.

Defendant did not except to the court's decision to instruct on attempted rape and is precluded at this stage from raising an objection to the instruction.

Due to the seriousness of the charge involved we have, however, in our discretion, examined the record concerning the merit of defendant's contention. Defendant was charged with second-degree rape, or in the alternative with attempted second-degree rape. He was found guilty of attempted second-degree rape. Defendant argues that under *State v. McNicholas*, 322 N.C. 548, 369 S.E.2d 569 (1988), no instruction on attempted rape should have been given. In *McNicholas*, the trial court had refused to instruct on attempted rape and defendant was subsequently convicted of first-degree rape. On appeal, the Supreme Court held that the trial court was correct in refusing to instruct on attempted rape since all the evidence showed that either a rape was committed or it was not, and that there was no evidence of attempted rape. *Id.*

We find *McNicholas* distinguishable from the instant case because in this case there was sufficient evidence to support an instruction on attempted rape. Although the prosecuting witness did testify that she was raped by defendant in his bedroom, at other points in her testimony she described only an attempt to rape her. On direct examination the witness stated the following:

Q. What happened then after he pulled all his clothes off?

A. He tried to put his penis inside of me and have sex with me, but I would not let him and then I pushed him away and that's when he grabbed me by my throat and he was choking me and I couldn't breathe and then I got up and I was putting on my clothes and that's when he made me suck on his penis.

On cross-examination the witness was questioned further about her statement:

Q. Going back to when the State first started, you say Jesse came into your room and pulled you to your mother's bedroom and I heard you say that he tried to put his penis in and you wouldn't let him, is that what you said?

A. Yes.

Q. Did you cross your legs at that time? You said you kept him off of you, how did you keep him off?

A. I tried to push him away from me with my hands.

Q. So actually what happened, he tried to put his penis in, but he couldn't do it, is that right?

In its entirety the minor witness's testimony concerning her alleged rape was somewhat unclear. There appear to be some conflicts as to the sequence of events and also whether, as quoted above, defendant actually raped her or only attempted to do so. The jury was, of course, free to believe or disbelieve the witness's testimony as it saw fit. In finding defendant guilty of attempted second-degree rape, the jury acted within its prerogative in choosing to believe some, but not all, of her testimony.

In our view there was sufficient evidence to support alternative jury instructions for both second-degree rape and attempted second-degree rape and the court did not err in refusing to arrest judgment on the verdict.

We conclude that defendant received a fair trial free of prejudicial error.

No error.

Judges EAGLES and GREENE concur.