STATE OF NORTH CAROLINA v. JIMMY RAY OXENDINE

No. COA01-1079

(Filed 18 June 2002)

**1. Rape— attempted—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the two charges of attempted rape, because: (1) a reasonable jury could infer from defendant's actions with the two victims that he intended to rape them; (2) the fact that defendant ended his assault before he actually raped either victim or the reasons for the change in his stated intent to rape the women is irrelevant for purposes of attempted rape; and (3) the fact that the women apparently managed to dissuade defendant from his stated purpose does not alter defendant's initial actions towards them.

**2. Kidnapping— second-degree—sufficiency of evidence— separate act**

The trial court did not err in an attempted rape and kidnapping case by denying defendant's motion to dismiss the charge of first-degree and second-degree kidnapping regarding one of the victims, because defendant's act of forcing the victim to the bedroom at knifepoint in order to prevent her children from either witnessing or hindering the intended rape constituted a separate act.

**3. Kidnapping— second-degree—sufficiency of evidence— failure to show separate act**

The trial court erred in an attempted rape and kidnapping case by denying defendant's motion to dismiss the charge of first-degree and second-degree kidnapping regarding the second victim, because the State failed to present sufficient evidence that defendant's restraint of the victim by knifepoint was for purposes other than his stated intention to rape her.

Appeal by defendant from judgments entered 18 January 2001 by Judge Michael E. Beale in Cabarrus County Superior Court. Heard in the Court of Appeals 23 May 2002.

*Attorney General Roy Cooper, by Special Deputy Attorney General J. Charles Waldrup, for the State.*

*Matthew F. Ginn for defendant appellant.*

TIMMONS-GOODSON, Judge.

Jimmy Ray Oxendine ("defendant") appeals from his convictions of two counts of attempted first-degree rape and two counts of second-degree kidnapping. For the reasons stated herein, we vacate in part the judgment of the trial court.

The State presented evidence at trial tending to show the following: On the afternoon of 9 June 2000, defendant appeared at the rear door of the Concord, North Carolina, residence of Melinda Arnett ("Arnett"), and requested a cup of sugar. Arnett, who was home at the time with her two young children, knew defendant as the boyfriend of her neighbor, and she had loaned defendant sugar on a previous occasion. After Arnett gave defendant the sugar, he asked her whether "[she] and [her] husband are church-goers." When Arnett replied affirmatively, defendant stated that he would "like to talk to [her] about . . . something" and entered Arnett's house. Arnett and defendant then sat down in the living room, whereupon defendant proceeded to tell Arnett about problems he was having with his girlfriend. Defendant stated that he also wanted to talk to Arnett's husband, and asked her when she expected him home. Arnett informed him that her husband would be coming home early that day.

Upon concluding their conversation, defendant requested to use Arnett's bathroom. When he returned to the living room, he indicated that he was leaving and headed towards the rear door of the resi-

dence. Before reaching the door, however, defendant turned towards Arnett and pulled out a long butcher knife from the waistband of his pants. Defendant pointed the knife at Arnett and ordered her to walk to the bedroom with him. Arnett initially complied with defendant's demand, but when she reached the door of the bedroom, she told defendant that she "couldn't do that, that my body belongs to Jesus Christ and to my husband only and I will not violate my body for somebody else." Arnett testified that she was terrified, and that her voice was "shaky and I was panicking." At that point, Arnett's older child approached them and asked his mother what was wrong. Defendant told Arnett to "[s]end him back to the living room and have him watch T.V. and he'll never know anything is going to happen because he won't see anything. We'll lock the door and let them watch T.V. and he'll never see anything." Arnett again refused and offered to give defendant money. Defendant replied that, "this is not about money; it's about sex, all I want is sex." Arnett told defendant that her son's therapist would be arriving at the house shortly and that they would not "have time for anything anyway so . . . let's go to the living room and talk." Defendant then told Arnett to perform an act of masturbation upon him, but finally agreed to return to the living room.

Shortly thereafter, Michelle Ashby ("Ashby"), an occupational therapist, arrived at the residence for her appointment with Arnett's son. Defendant remained seated in a chair in the living room with the knife concealed by his side while Ashby worked with Arnett's child. When Arnett took her older son to the bathroom, defendant whispered and gestured for Ashby to come closer to him. When Ashby moved to within two feet of defendant, he asked her whether she was married and then brandished his knife. Defendant ordered Ashby to "go to the back bedroom and quietly take [her] clothes [off] so that the kids wouldn't see what he was going to do." Ashby testified that she "started to shake" and "couldn't breathe very well." She began pleading with defendant not to hurt her and asked him why he wanted to rape her. Defendant replied, "Because I want to[.]" When Ashby told defendant that he could probably find someone willing to have sexual intercourse with him, he stated, "[N]o, I want to have sex with you[.]" Defendant stood over Ashby with his knife pointed towards her and told her to "come on," pointing towards the bedroom.

Arnett returned from the bathroom with her son and saw defendant standing over and reaching for Ashby with his knife drawn.

Both women then begged defendant not to hurt them, telling him that if he left, they would not call the police. After approximately thirty minutes, defendant agreed to leave.

The jury found defendant guilty of two counts of attempted first-degree rape and two counts of second-degree kidnapping, for which the trial court sentenced defendant to an active term of imprisonment for 189 to 236 months. From his convictions and resulting sentence, defendant appeals.

---

Defendant argues that the trial court erred in denying his motion to dismiss the charges against him at the close of the State's evidence. For the reasons stated herein, we vacate in part the judgment of the trial court.

When a defendant moves to dismiss the charges against him, the only issue for the trial court is "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995). In reviewing a motion to dismiss, the trial court should be concerned only with the sufficiency of the evidence, and not with its weight. *See State v. Sokolowski*, 351 N.C. 137, 143, 522 S.E.2d 65, 69 (1999). The court must consider the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from that evidence. *See State v. Jaynes*, 342 N.C. 249, 274, 464 S.E.2d 448, 463 (1995), *cert. denied*, 518 U.S. 1024, 135 L. Ed. 2d 1080 (1996). Contradictions and discrepancies in the evidence are resolved in favor of the State. *See State v. Gibson*, 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995). Review of the sufficiency of the evidence to withstand the defendant's motion to dismiss is the same whether the evidence is direct, circumstantial, or both. *See State v. Jones*, 303 N.C. 500, 504, 279 S.E.2d 835, 838 (1981).

In the instant case, defendant was charged with attempted first-degree rape and kidnapping in the first and second degrees. To convict a defendant of attempted rape, the State must prove the following two essential elements beyond a reasonable doubt: (1) that the defendant had the specific intent to rape the victim, and (2) "that [the] defendant committed an act that goes beyond mere preparation, but falls short of the actual commission of the rape." *State v. Schultz*,

88 N.C. App. 197, 200, 362 S.E.2d 853, 855 (1987), *affirmed per curiam*, 322 N.C. 467, 368 S.E.2d 386 (1988). "The element of intent as to the offense of attempted rape is established if the evidence shows that [the] defendant, at any time during the incident, had an intent to gratify his passion upon the victim, notwithstanding any resistance on her part." *Id.* at 200, 362 S.E.2d at 855-56; *see also State v. Brayboy*, 105 N.C. App. 370, 374, 413 S.E.2d 590, 593 (1992) (defining attempt in the context of an attempted rape).

**[1]** Defendant contends that there was insufficient evidence of his intent to rape either Arnett or Ashby in that, once the victims presented resistance, he ceased his sexual assault. Defendant argues that, had he possessed the requisite intent to commit the act, resistance by the victims would not have stopped him. We disagree.

As stated *supra*, the element of intent as to the offense of attempted rape is established if the evidence shows that defendant, at any time during the incident, had an intent to gratify his passion upon the victim. *See Schultz*, 88 N.C. App. at 200, 362 S.E.2d at 855-56. Intent to rape may be "proved circumstantially by inference, based upon a defendant's actions, words, dress, or demeanor." *State v. Cooper*, 138 N.C. App. 495, 498, 530 S.E.2d 73, 75, *affirmed per curiam*, 353 N.C. 260, 538 S.E.2d 912 (2000). An "overt act manifesting a sexual purpose or motivation on the part of the defendant is adequate evidence of an intent to commit rape." *State v. Dunston*, 90 N.C. App. 622, 625, 369 S.E.2d 636, 638 (1988). Evidence that an attack is sexually motivated "will support a reasonable inference of an intent to engage in vaginal intercourse with the victim even though other inferences are also possible." *Id.* at 625-26, 369 S.E.2d at 638.

Considering the evidence in the light most favorable to the State, a reasonable jury could infer from defendant's actions with Arnett and Ashby that he intended to rape them. Defendant showed his intent towards Arnett by pulling out the butcher knife, ordering her to walk to the bedroom at knifepoint, and telling her he wanted to have sex with her. He also told Arnett to perform an act of masturbation upon him. These actions by defendant demonstrate that his attack was sexually motivated and provide sufficient evidence to support a reasonable inference that defendant intended to rape Arnett. Defendant's actions towards Ashby provide similar support for the attempted rape charge. Defendant pointed the knife at Ashby and demanded that she go to the bedroom and undress. He also told her that he intended to rape her. The fact that defendant ended his

assault before he actually raped either Arnett or Ashby, or the reasons for the change in his stated intent to rape the women, is irrelevant for purposes of attempted rape. The fact that the women apparently managed to dissuade defendant from his stated purpose does not alter defendant's initial actions towards them. "The jury could have reasonably inferred that, but for the victim's ingenuity and courage, she would have been subjected to attempted forcible sexual intercourse." *State v. Whitaker*, 316 N.C. 515, 519, 342 S.E.2d 514, 517 (1986). We hold there was sufficient evidence to support the jury's verdict, and the trial court therefore did nor err in denying defendant's motion to dismiss the charges of attempted rape.

**[2]** Defendant further contends that there was insufficient evidence of either second-degree or first-degree kidnapping. The elements of first-degree kidnapping are: (1) confining, restraining, or removing from one place to another; (2) any person sixteen years or older; (3) without such person's consent; (4) if such act was for the purposes of facilitating the commission of a felony. *See* N.C. Gen. Stat. § 14-39 (a)(2) (2001). The difference between first and second-degree kidnapping is

> [i]f the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class C felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree.

N.C. Gen. Stat. § 14-39(b) (2001).

In *State · v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978), our Supreme Court stated that "certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim." *Id.* at 523, 243 S.E.2d at 351. "[R]estraint, which is an inherent, inevitable feature of such other felony," cannot also form the basis of a kidnapping conviction. *Id.* Nonetheless, "two or more criminal offenses may grow out of the same course of action," *id.*, and there is no barrier to convicting a defendant for kidnapping, "by restraining his victim, and also of another felony to facilitate which such restraint was committed, provided the restraint, which constitutes the kidnapping, is a separate, complete act, independent of and apart from the other felony." *Id.* at 524, 243 S.E.2d at 352. *See also State v. Silhan*, 297 N.C. 660, 673, 256 S.E.2d 702, 710 (1979) (noting

that restraint of a rape victim may constitute kidnapping if it is a separate and independent act). Moreover, "[a]sportation of a rape victim is sufficient to support a charge of kidnapping if the defendant could have perpetrated the offense when he first threatened the victim, and instead, took the victim to a more secluded area to prevent others from witnessing or hindering the rape." *State v. Walker,* 84 N.C. App. 540, 543, 353 S.E.2d 245, 247 (1987).

Defendant contends there was insufficient evidence to support the charge of first or second-degree kidnapping. Defendant argues that there was insufficient evidence of a sexual assault by defendant to support the essential element that the "purpose of the restraint was to facilitate a felony." Defendant further argues that, because he did not move Ashby in any manner, her restraint was not a separate and complete act independent of the crime of attempted rape. We agree in part with defendant's argument.

We have determined that there was adequate evidence to support both counts of attempted rape against defendant. There was also sufficient evidence to support the charge of first or second-degree kidnapping as to defendant's actions regarding Arnett. Defendant's act of forcing Arnett to the bedroom at knifepoint in order to prevent her children from either witnessing or hindering the intended rape constituted a separate act and properly supports the charge of first or second-degree kidnapping. Moreover, we note that the jury found defendant guilty of second-degree kidnapping, rather than first-degree kidnapping. The trial court did not err in submitting the first and second-degree kidnapping charges as to Arnett to the jury.

[3] We agree with defendant, however, that there was insufficient evidence to support the kidnapping charges as to Ashby. As stated *supra,* the restraint required for kidnapping must be an act independent of the intended felony. *See State v. Harris,* 140 N.C. App. 208, 213, 535 S.E.2d 614, 617, *disc. review denied,* 353 N.C. 271, 546 S.E.2d 122 (2000). "The test of the independence of the act is 'whether there was substantial evidence that the defendant restrained or confined the victim separate and apart from any restraint necessary to accomplish the [felony].' " *Id.* at 213, 535 S.E.2d at 618 (quoting *State v. Mebane,* 106 N.C. App. 516, 532, 418 S.E.2d 245, 255, *disc. review denied,* 332 N.C. 670, 424 S.E.2d 414 (1992)). The restraint of the victim must be a complete act, independent of the sexual offense. *See State v. Ackerman,* 144 N.C. App. 452, 457, 551 S.E.2d 139, 142 (2001). The State presented insufficient evidence in the instant case that defendant's restraint of Ashby by

knifepoint was for purposes other than his stated intention to rape her. Although defendant instructed Ashby to go to the back bedroom, Ashby remained on the floor and never moved during her encounter with defendant. As there was insufficient evidence to support the kidnapping charges as to Ashby, we conclude that the trial court erred in submitting such to the jury. We therefore vacate defendant's conviction of second-degree kidnapping regarding Ashby and remand defendant's case to the trial court for re-sentencing.

Vacated in part, no error in part.

Judges MARTIN and CAMPBELL concur.