STATE OF NORTH CAROLINA v. MICHAEL FARMER

No. COA02-1405

.   (Filed 1 July 2003)

**1. Rape— attempted second-degree rape—sufficiency of evidence**

The trial court properly denied defendant's motion to dismiss an attempted second-degree rape charge where there was sufficient evidence of intent and overt acts in defendant's initial subterfuge; his suggestive touching of the victim and expression of desire; his assault on her, which included pulling her pants down while he was lying on top of her; and his threats when she tried to escape.

**2. Rape— attempted—pattern jury instruction**

An almost verbatim rendition of the pattern jury instruction on attempted rape was not erroneous. Although defendant argued that the instruction was incomplete because it did not define penetration and did not adequately explain intent, he had no authority for his contention and none was found by the Court of Appeals.

**3. Jury— verdict form marked incorrectly—second form supplied—no mistrial**

The trial court did not err in a second-degree rape prosecution by giving the jury a second verdict form, and did not abuse

its discretion by denying defendant's motion for a mistrial, where there was a disturbance when the clerk read the verdict and the jury indicated that the original form had been incorrectly marked.

Appeal by defendant from judgment entered 15 May 2002 by Judge Milton F. Fitch, Jr. in Superior Court, Wilson County. Heard in the Court of Appeals 30 June 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Philip A. Lehman, for the State.*

*Rudolph A. Ashton, III for defendant-appellant.*

WYNN, Judge.

From his conviction on the charge of attempted second-degree rape and sentence to a presumptive term of 94-122 months imprisonment, defendant—Michael Farmer—contends the trial court erred by (1) denying his motion to dismiss, (2) denying his motion to set aside the jury verdict, (3) improperly instructing the jury on the elements of attempted second-degree rape, and (4) denying his motion for a mistrial. We find no error in his trial.

At trial, the State's evidence tended to show that, on 9 January 2000 at approximately 2:00 a.m., defendant gained access to a female's apartment under the guise of warning her of threats against her by her estranged husband who was also defendant's cousin. At defendant's suggestion, the female agreed to ride with him to the Wilson County Sheriff's Department to swear out a warrant against her estranged husband for communicating threats.

Once in the car, however, defendant began to make sexual advances towards the female, and admitted that the story about her estranged husband's threats was a fabrication. The female rebuffed defendant's advances. Nevertheless, defendant took her back to her apartment where the female attempted to escape by closing the apartment door before defendant could enter. Defendant, however, forced his way into the apartment, and told the female that he had coveted her for a long time. When the female explained to defendant that she was in a relationship with another man, defendant became violent, assaulting her and knocking her to the floor. Defendant stated, "I can't believe you're cheating on my cousin." Defendant insisted, "you're going to give me some." Defendant pulled off her pants while she was on the floor. When the female attempted to move

away from defendant, defendant threatened to shoot her with a gun, which defendant claimed to have in his pocket. In order to get away, the female feigned cooperation, and suggested to defendant that they go to defendant's house. Defendant agreed and allowed her to get dressed.

Thereafter, the female suggested, and defendant agreed, that defendant follow her in his own car. However, instead of driving to defendant's residence, the female drove to the home of her male friend's residence; got out the car and ran to tell her male friend of defendant's actions. Defendant pursued the female, grabbed her by the arm, and threatened: "You tell anybody[,] I'm going to kill you." Defendant also threatened to shoot her male friend. The female broke away from defendant and ran to her male friend, whereupon defendant left. Thereafter, the female reported the incident to the Wilson Police Department.

Defendant presented the alibi testimony of his girlfriend who stated that on the morning of the alleged incident, 8 January 2000, she was at the Wilson Memorial Hospital giving birth to a child fathered by defendant. She testified that defendant was with her the entire day of 8 January 2000, left the hospital at about 10:00 p.m., and returned to the hospital at 4:00 a.m. on the morning of 9 January 2000. Defendant testified that he spent the entire day of 8 January 2000 with Ms. Farmer and did not leave the hospital until 10:00 p.m. He testified that his friend, David Ferguson, picked him up from the hospital, and the two men went to a nightclub at around 11:00 p.m. where they remained until the club closed at around 3:00 a.m. on 9 January 2000. After leaving the club, Mr. Ferguson took defendant back to the hospital. Mr. Ferguson corroborated defendant's testimony.

[1] By his first argument, defendant contends the trial court erred in denying his motion to dismiss and motion to set aside the verdict because there was insufficient evidence to support a conviction for attempted second-degree rape. We disagree.

"In ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, which is entitled to every reasonable inference which can be drawn from that evidence." *State v. Dick*, 126 N.C. App. 312, 317, 485 S.E.2d 88, 91 (1997). "[T]he question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged . . . and (2) of defendant's being the perpetrator of such offense." *State v. Brayboy*, 105 N.C. App. 370, 373-74, 413 S.E.2d

590, 592 (1992). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Williams*, 133 N.C. App. 326, 328, 515 S.E.2d 80, 82 (1999) (citation omitted).

To obtain a conviction for attempted second-degree rape, the State must prove beyond a reasonable doubt that (1) the accused had the specific intent to commit rape; and (2) the accused committed an overt act for the purpose, which goes beyond mere preparation, but falls short of the complete offense. *State v. Robertson*, 149 N.C. App. 563, 567, 562 S.E.2d 551, 554 (2002). The element of intent is seldom proved by direct evidence, but must be generally inferred for the facts and surrounding circumstances. *State v. Morris*, 156 N.C. App. 335, 340, 576 S.E.2d 391, —— (2003). In *State v. Oxendine*, for instance, we noted that the "[i]ntent to rape may be 'proved circumstantially by inference, based upon a defendant's actions, words, dress, or demeanor.'" 150 N.C. App. 670, 674, 564 S.E.2d 561, 564 (2002) (citation omitted). The intent to commit an attempted rape may be established "if the evidence shows that [the] defendant, at any time during the incident, had an intent to gratify his passion upon the victim, notwithstanding any resistance on her part." *State v. Schultz*, 88 N.C. App. 197, 200, 362 S.E.2d 853, 855-56 (1987); *see also State v. Dunston*, 90 N.C. App. 622, 625, 369 S.E.2d 636, 638 (1988) Furthermore, "[e]vidence that an attack is sexually motivated will support a reasonable inference of an intent to engage in vaginal intercourse with the victim even though other inferences are also possible." *Oxendine*, 150 N.C. App. at 674, 564 S.E.2d at 564 (citation omitted).

Although defendant argues to the contrary, we conclude that the evidence, when viewed in the light most favorable to the State, is sufficient to prove each element of the offense charged. Defendant's initial subterfuge; subsequent suggestive touching of the female along with the expression of his desire for her; later assault, which included pulling the female's pants down while lying on top of her; and threats of harm when she tried to get away from him, are sufficient to permit a reasonable fact-finder to infer that defendant had the requisite intent to rape the female and committed sufficient overt acts toward that end. Accordingly, the trial court properly denied defendant's motion to dismiss. It also follows that the trial court did not abuse its discretion in denying defendant's post-trial motion to set aside the verdict as contrary to the weight of the evidence.

[2] By his next argument, defendant contends the trial court erred by incorrectly instructing the jury on the elements attempted second-degree rape. As defendant failed to properly preserve this matter for review under N.C. R. App. P. 10(b)(2), defendant seeks plain error review of the court's jury instructions. After carefully reviewing the record, we find no error.

"In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983). Significantly, the *Odom* Court noted, "it is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Id.* at 661, 300 S.E.2d at 378 (citation omitted).

In the case *sub judice*, the trial court instructed the jury on the elements of attempted second-degree rape as follows:

Now, I charge for you to find the Defendant guilty of attempted second degree rape, the State must prove beyond a reasonable doubt that on the alleged date the Defendant intended to have vaginal intercourse with the victim by force and against her will, and that he performed acts which were calculated and designed to bring about vaginal intercourse by force and against the victim's will, and it would have resulted in such intercourse had the Defendant not been stopped or prevented from completing his apparent course of action.

While defendant does not argue that the instruction, which is almost a verbatim rendition of the pattern jury instruction for attempted rape, is an incorrect statement of the law, he contends that the instruction is incomplete. Defendant contends that the instruction is fatally flawed because it (1) failed to define penetration, and (2) failed to adequately explain the intent to commit intercourse. Notably, however, defendant references no authority for his contention in this regard. Furthermore, our review of the relevant case law has revealed an absence of support for defendant's position. Taking the instruction as a whole, we conclude that defendant cannot show error—plain or otherwise—in the trial court's charge. *See State v. Robinson*, 97 N.C. App. 597, 603, 389 S.E.2d 417, 421 (1990) (rejecting the defendant's argument that the trial court erred in instructing the jury on the elements of attempted second degree rape and finding that the charge was "sufficient to provide the jury with a

correct statement of the law to apply to the evidence before them," where the court properly charged that in order to find the defendant guilty of attempted rape, the jury must determine that the defendant intended to have "vaginal intercourse with the victim *by force and against her will*") (emphasis supplied).

**[3]** By his final argument, defendant contends the trial court erred in submitting a second verdict form to the jury and denying his motion for mistrial after the jury indicated that the initial verdict form had been incorrectly marked. Specifically, defendant argues that a "disruptive outbreak" by defendant's family, which occurred after the reading of the initial, and erroneous, verdict "resulted in substantial and irreparable prejudice to the defendant's case," and therefore, he was entitled to a mistrial. We disagree.

The trial court's ruling on a motion for mistrial generally "lies within the sound discretion of the trial court." *State v. Lippard*, 152 N.C. App. 564, 574, 568 S.E.2d 657, 664 (citation omitted). Such a ruling will be reversed only upon a showing of a manifest abuse of discretion. *Id.*

In the instant case, the jury returned to the courtroom after reaching an unanimous verdict. The clerk read the verdict as being "not guilty," and apparently there was a brief disturbance in the courtroom. The judge warned against any further "outbreaks" and proceeded to ask the jurors if that was their verdict. The jurors responded in unison, "no." The judge asked the jurors again if the verdict was theirs, and again, the jurors told the court that the verdict, as read by the clerk, was incorrect. The jury reiterated that their verdict was unanimous. Over defendant's objections, the judge ordered the clerk to give the jury a second verdict sheet so that they could accurately record their unanimous verdict. The jury subsequently left the courtroom and went back to the jury room to complete the second verdict sheet. Some eight minutes later, the jury returned to the courtroom and submitted a unanimous verdict finding defendant guilty as charged. The jury foreman explained that he had erroneously marked the first verdict sheet, and that the verdict had always been guilty. The judge specifically inquired of the foreman: "And that there was nothing regarding an outbreak in this courtroom that caused this jury to change its position from the first verdict pronounced to the second sheet that you now possess?" The foreman replied: "Not to my knowledge, Your Honor." The jury thereafter in unison and individually declared that the second verdict form of

DRAUGHON v. HARNETT CTY. BD. OF EDUC.

[158 N.C. App. 705 (2003)]

guilty was the true verdict. The trial judge then accepted the guilty verdict and ordered that it be recorded.

It is well settled that "[a] verdict is not complete until accepted by the court." *State v. Best*, 280 N.C. 413, 419, 186 S.E.2d 1, 5 (1972). Further, although not controlling law, we are persuaded by an earlier unpublished opinion of this Court in which we addressed a similar set of circumstances, *State v. McCallum*, 149 N.C. App. 977, 563 S.E.2d 308 (2002) (unpublished). In *McCallum*, this Court held that the trial court did not err in submitting a second verdict form and instructing it to correct a clerical error. *Id.*

While defendant attempts to distinguish the facts in the present case by drawing the Court's attention to the "disruptive outburst" that allegedly occurred here, those attempts fail. Accordingly, we conclude that the trial court did not err in giving the jury a second verdict form to correct the clerical error made by the foreman, and that the trial court did not abuse its discretion in denying defendant's motion for mistrial.

In sum, we hold that defendant received a fair trial, free of prejudicial error.

No error.

Judges TYSON and STEELMAN concur.