IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-703

Filed 7 May 2024

Jackson County, Nos. 20 CRS 226–27, 50134–35, 50563–64; 21 CRS 58, 574

STATE OF NORTH CAROLINA

v.

KENNETH DAVID GROAT, Defendant.

Appeal by Defendant from judgment entered 18 October 2022 by Judge William H. Coward in Jackson County Superior Court. Heard in the Court of Appeals 20 March 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General Caden W. Hayes, for the State.*

*New Hanover County Public Defender, by Assistant Public Defender Max E. Ashworth, III, for Defendant-Appellant.*

CARPENTER, Judge.

Kenneth David Groat ("Defendant") appeals from judgment after a jury convicted him of one count of attempted first-degree kidnapping, one count of statutory sex offense with a child fifteen years of age or younger, three counts of indecent liberties with a child, and three counts of statutory rape of a child fifteen years of age or younger. On appeal, Defendant argues the trial court erred by: (1) joining his charges for one trial; and (2) denying his motion to dismiss his attempted first-degree kidnapping charge. After careful review, we discern no error.

## I.    Factual & Procedural Background

On 18 June 2020, a grand jury indicted Defendant with two counts of indecent liberties with a child, one count of statutory sex offense with a child fifteen years of age or younger, and one count of statutory rape of a child fifteen years of age or younger.  On 28 January 2021, a grand jury indicted Defendant with attempted first-degree kidnapping.  On 15 March 2021, a grand jury indicted Defendant with one count of statutory rape of a child fifteen years of age or younger and one count of indecent liberties with a child.  And lastly, on 15 November 2021, a grand jury indicted Defendant with an additional count of statutory rape of a child fifteen years of age or younger.

Before trial, the State filed a motion to join all of Defendant's charges for one trial, and Defendant filed a motion to sever, objecting to the joinder of his charges. The trial court granted the State's motion and denied Defendant's.  Defendant did not renew his joinder objection at trial.

Trial evidence tended to show the following.  In 2011, Defendant began dating the mother of A.C. and T.Q.[1]  Defendant moved in with, and eventually married, A.C. and T.Q.'s mother.

A.C. was in the fifth grade during the following events.  One night, Defendant laid "next to [A.C.]" and put "his hands in [A.C.'s pants]."  Defendant asked A.C. to

---

[1] We use pseudonyms to protect the identity of the juveniles.  *See* N.C. R. App. P. 42(b).

"get on top of [Defendant] and jump." On several other occasions, Defendant would "stick his hands in [A.C.'s] bra" and put his "mouth . . . on [A.C.'s] boobs" while she was sleeping. Defendant also digitally penetrated A.C.

T.Q. was twelve years old during the following events. One night, Defendant touched T.Q. "up [her] leg and . . . on [her] stomach and [her] arms. And then [she] saw him pull out his phone, and he lifted [her] pants and underwear and took a photo of [her]." Days later, Defendant again "touch[ed T.Q.'s] arms, touch[ed her] legs[,] and . . . touch[ed her] breasts[,] lifting up [her] pants and underwear to look at everything." Defendant eventually started "try[ing] to have penetrative sex with [T.Q.]"

When T.Q. was thirteen years old, Defendant impregnated her. To cover up the abuse, Defendant convinced T.Q. to say that she "snuck off and had sex with some guy at [a] football game, and then [she] just became pregnant." T.Q. aborted the unborn child. Undeterred, Defendant continued to have sex with T.Q.

Defendant threatened to kill himself if T.Q. reported the abuse. He also threatened to kill T.Q. "so [they could] be together forever." Defendant also told T.Q. that if she said anything, "he would kidnap [T.Q.,] . . . go to a motel room, and then . . . commit suicide together."

On 20 January 2020, police arrested Defendant for the above abuse. Defendant posted bond and was released. As a condition of his bond, Defendant had to avoid any "contact w[ith] any minor under [the] age of sixteen" and "reside with [his]

parents in Michigan while on release." Nonetheless, on 21 May 2020, Defendant texted T.Q. after his release, and T.Q. notified the police. The police then instructed T.Q. to ask Defendant to meet her at a Sonic restaurant near T.Q.'s work, in Sylva, North Carolina.

On 22 May 2020, police officers observed Defendant, in his car, parked "in the middle of the [Sonic] drive area facing [T.Q.'s workplace.]" The officers arrested Defendant. During the subsequent search of Defendant's car, officers found the following: binoculars, two rolls of duct tape, pepper spray, a pocketknife, two cell phones, a .22-caliber pistol, .22-caliber ammunition, a 40-pack of bottled water, a 15-pack of granola bars, two five-gallon jugs of gasoline, and a recent receipt for cable ties.

On 18 October 2022, the jury convicted Defendant of one count of attempted first-degree kidnapping, one count of statutory sex offense with a child fifteen years of age or younger, three counts of indecent liberties with a child, and three counts of statutory rape of a child fifteen years of age or younger. The trial court sentenced Defendant to between 1,072 and 1,616 months of imprisonment. On 1 November 2022, Defendant filed a written notice of appeal.

## II.    Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III.    Issues

The issues on appeal are whether the trial court erred by: (1) joining

Defendant's charges for a single trial; and (2) denying Defendant's motion to dismiss his attempted first-degree kidnapping charge.

## IV.   Analysis

### A.  Joinder of Charges for One Trial

Defendant first argues that the trial court erred by joining his charges for one trial. We conclude that Defendant waived this argument.

In a criminal case, the State may join multiple charges to be adjudicated in one trial. *See State v. Bracey*, 303 N.C. 112, 116–17, 277 S.E.2d 390, 393–94 (1981). If the defendant believes the joinder is unfair, however, he may move to sever the charges. *See* N.C. Gen. Stat. § 15A-927(a)(1) (2023).

As a general rule concerning appellate review, the appellant must raise the issue at trial before we can consider it. *See, e.g.*, *Regions Bank v. Baxley Com. Props., LLC*, 206 N.C. App. 293, 298–99, 697 S.E.2d 417, 421 (2010) (citing N.C. R. App. P. 10(b)(1)). But motions to sever have a higher preservation hurdle: A motion to sever offenses must be made before trial, N.C. Gen. Stat. § 15A-927(a)(1), and if the trial court denies the motion, the "right to severance is waived by failure to renew the motion" at trial, *id.* § 15A-927(a)(2).

Concerning waiver of severance arguments, some of our caselaw appears to conflict with decisions of the North Carolina Supreme Court. *Compare State v. Silva*, 304 N.C. 122, 128, 282 S.E.2d 449, 453 (1981) ("Defendant here moved to sever prior to trial but did not renew that motion at the close of all evidence; therefore, he has

waived any right to severance, [N.C. Gen. Stat.] § 15A-927(a)(2).") *with State v. Wood*, 185 N.C. App. 227, 231, 647 S.E.2d 679, 683 (2007) (reviewing the trial court's severance denial for abuse of discretion, despite the defendant's failure to renew his severance motion at trial).

We, however, cannot overrule our state's highest court.  *See Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993).  Accordingly, we follow *Silva*, not *Wood*.  *See Dunn*, 334 N.C. at 118, 431 S.E.2d at 180.  And tracking nicely with the text of section 15A-927, the Court in *Silva* held that a defendant waives his severance arguments by failing to renew his severance motion at trial.  *Silva*, 304 N.C. at 128, 282 S.E.2d at 453.

Here, Defendant moved pretrial to sever his charges, but he failed to renew his severance argument at trial.  Therefore, Defendant waived his severance argument, and we decline to review the trial court's decision to join Defendant's charges.  *See* N.C. Gen. Stat. § 15A-927(a)(2); *Silva*, 304 N.C. at 128, 282 S.E.2d at 453.

**B. Motion to Dismiss**

Next, Defendant argues that the trial court erred by denying his motion to dismiss his attempted first-degree kidnapping charge.  After careful review, we disagree.

We review a denial of a motion to dismiss de novo.  *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).  Under a de novo review, this Court "considers the matter anew and freely substitutes its own judgment' for that of the lower

tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980).

In evaluating the sufficiency of the evidence concerning a motion to dismiss, the evidence must be considered "in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom . . . ." *State v. Winkler*, 368 N.C. 572, 574–75, 780 S.E.2d 824, 826 (2015) (quoting *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)). "Contradictions and discrepancies do not warrant dismissal of the case; rather, they are for the jury to resolve. Defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Agustin*, 229 N.C. App. 240, 242, 747 S.E.2d 316, 318 (2013) (quoting *State v. Franklin,* 327 N.C. 162, 172, 393 S.E.2d 781, 787 (1990)).

"An attempted crime is an intentional 'overt act' done for the purpose of committing a crime but falling short of the completed crime." *State v. Broome*, 136 N.C. App. 82, 87, 523 S.E.2d 448, 453 (1999) (citing *State v. Collins*, 334 N.C. 54, 60, 431 S.E.2d 188, 192 (1982)). First-degree kidnapping requires: (1) confining, restraining, or removing from one place to another; (2) a nonconsenting person who is sixteen years or older; (3) to facilitate a felony; and (4) not releasing the person in a safe place, seriously injuring the person, or sexually assaulting the person. *See State v. Oxendine*, 150 N.C. App. 670, 675, 564 S.E.2d 561, 565 (2002).

Here, the State offered the following trial testimony. Defendant threatened to kill T.Q. "so [they could] be together forever." Defendant also told T.Q. that if she said anything, "he would kidnap [T.Q.,] . . . go to a motel room, and then . . . commit suicide together."

Further, police officers arrested Defendant outside of T.Q.'s workplace. And during the subsequent search of Defendant's car, officers found binoculars, two rolls of duct tape, pepper spray, a pocketknife, two cell phones, a .22-caliber pistol, .22-caliber ammunition, a 40-pack of bottled water, a 15-pack of granola bars, two five-gallon jugs of gasoline, and a recent receipt for cable ties.

First, Defendant does not contest T.Q.'s age as of 22 May 2020, and testimony shows that T.Q. did not consent to go anywhere with Defendant, as she cooperated with police to apprehend him. Second, testimony that Defendant parked and waited outside of T.Q.'s workplace is evidence that Defendant targeted T.Q. Third, the duct

tape found in Defendant's vehicle is evidence that Defendant intended to confine or restrain T.Q. Fourth, testimony that Defendant previously stated he wanted to kidnap T.Q. so they could "commit suicide together"—coupled with the seizure of, among other things, a handgun and a knife from Defendant's car—is evidence that Defendant intended to commit a felony by killing T.Q. And finally, testimony that Defendant parked and waited outside of T.Q.'s workplace is evidence of an "'overt act' done for the purpose of" kidnapping T.Q. *See Broome*, 136 N.C. App. at 87, 523 S.E.2d at 453.

In sum, the above-mentioned evidence is substantial concerning each element of attempted first-degree kidnapping because a reasonable jury could accept it as "adequate to support a conclusion" that Defendant attempted to kidnap T.Q. *See Smith*, 300 N.C. at 78, 265 S.E.2d at 169; *Oxendine*, 150 N.C. App. at 675, 564 S.E.2d at 565; *Broome*, 136 N.C. App. at 87, 523 S.E.2d at 453. Accordingly, the trial court did not err by denying Defendant's motion to dismiss his attempted first-degree kidnapping charge. *See Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455.

## V. Conclusion

We conclude that Defendant waived his severance argument by failing to renew it at trial, and the trial court did not err by declining to dismiss Defendant's attempted first-degree kidnapping charge.

NO ERROR.

Judges TYSON and STADING concur.