STATE OF NORTH CAROLINA v. RONALD ALLEN SIMPSON

No. COA07-445

(Filed 4 December 2007)

**1. Kidnapping— first-degree—instruction—mental injury beyond normally experienced by other victims not required**

The trial court did not err in its instruction to the jury on the element of serious injury for first-degree kidnapping by its failure to instruct the jury that a serious mental injury also must be a

mental injury beyond that normally experienced by other victims of the type of crime charged.

**2. Evidence— prior crimes or bad acts—motive—intent— plan—scheme—system—design**

The trial court did not abuse its discretion in a first-degree kidnapping and attempted second-degree rape case by admitting over defendant's objection evidence of an incident between defendant and another victim even though defendant contends there were insufficient similarities between the two offenses, because: (1) the two incidents demonstrated many specific similarities, including that both incidents occurred in the early mornings hours, defendant told both victims that his vehicle would not start, defendant told the victim in this case that he would let her live if she stopped struggling and told the other victim he would kill her if she made any noise, defendant told the victim in this case that he was out of his head and told a law enforcement officer that he was not in his right mind after the incident involving the other victim, defendant tried to restrain and silence both victims, and defendant ceased his efforts when the victims forcefully resisted his advances; and (2) in light of the trial court's instruction to the jury limiting its consideration of the evidence to the purposes of showing motive, intent, and plan, scheme, system, or design, any tendency of the evidence to suggest decision on an improper basis was not excessive and does not outweigh the probative value of the evidence.

**3. Kidnapping— first-degree—restraint—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree kidnapping case even though defendant contends the State failed to present substantial evidence of the required element that the restraint be a separate complete act independent of and apart from the attempted second-degree rape, because the restraint defendant used went beyond the restraint inherent in the crime of attempted second-degree rape when the evidence indicated: (1) defendant straddled the victim on the sofa, hit her, tried to pull up her tank top, and had his pants unzipped, at which time he had completed the crime of attempted second-degree rape; (2) defendant then pulled the victim from the couch and dragged her to the kitchen toward the door; and (3) defendant's acts to restrain the victim while they struggled in the kitchen subjected her to greater danger and vul-

nerability than was inherent in the attempted rape that occurred on the couch.

**4. Rape— attempted second-degree—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of attempted second-degree rape, because: (1) the circumstantial evidence in this case was sufficient·to create a reasonable inference of guilt and therefore constituted substantial evidence of defendant's intent; and (2) the evidence indicated that defendant straddled the victim and tried to pull up her shirt, and his pants were unzipped thus demonstrating defendant's overt act in furtherance of the crime.

Appeal by defendant from judgments entered 27 September 2005 by Judge Charles P. Ginn in Haywood County Superior Court. Heard in the Court of Appeals 15 October 2007.

*Roy Cooper, Attorney General, by Amy C. Kunstling, Assistant Attorney General, for the State.*

*Michael E. Casterline for defendant-appellant.*

MARTIN, Chief Judge.

On 27 September 2005, defendant was convicted of first degree kidnapping and attempted second degree rape of Tracy Payne and was sentenced to a term of 108 to 139 months and a term of 96 to 125 months, to be served consecutively. Defendant appeals from the convictions.

The evidence presented at trial tended to show that Payne lived in Waynesville, North Carolina, and defendant was her next-door neighbor whom she had known casually because they had been classmates in school. Payne had a six-year-old son who sometimes played with defendant's daughter.

On the evening of 4 June 2004, Payne's son was staying with his father. Two friends were visiting Payne that evening, and they left in the early morning hours of 5 June 2004 to get something to eat. Payne fell asleep on the couch watching television until she was awakened by defendant knocking on her door. Defendant explained that his vehicle would not start, and he asked to borrow Payne's telephone. Payne let defendant inside, gave him her cell phone, and returned to the couch. Defendant took the cell phone into Payne's bathroom and

returned a few minutes later. Payne did not hear defendant talking on the cell phone and did not hear the toilet flush.

When defendant came out of the bathroom, he talked to Payne for a few minutes. Suddenly, defendant got on top of Payne and straddled her. Payne screamed and struggled, and defendant hit her in the face and head and told her that if she stopped screaming he would let her live. Defendant tried to put a piece of duct tape over Payne's mouth and pinned her down, trying to lift up her shirt. Payne was wearing a tank top without a bra. Payne told defendant that she expected her friends back soon, and defendant said "we're going over here," and dragged Payne off the couch and toward the kitchen. Payne noticed that defendant's pants were unzipped. Once in the kitchen, defendant opened the door to the outside of the house, and Payne resisted by grabbing the door. In the struggle, defendant pulled Payne's left arm behind her back, then she and defendant fell across the kitchen table, and finally she backed defendant against the wall and hit his mouth with the back of her head. At that point, defendant let go of Payne and apologized, asking her not to call the police. He also said he would go get help and told her he was "out of his head." He returned her cell phone and its battery to her and left.

Payne called the Haywood Sheriff's Department. The deputy who arrived took photographs of Payne's injuries, including bruises on her face, ears, head, arms, and leg, and a lacerated lip. At about six o'clock in the morning, defendant called Payne twice, although she only spoke to him once, and about an hour later defendant returned to Payne's home and knocked on her door. She refused to let him in, and he was arrested outside her home. Sometime after the incident, Payne discovered her dogs chewing on a roll of duct tape in the back yard. A few days after the incident Payne was treated at an urgent care facility for a pulled muscle in her right shoulder that caused her to miss work and lose her job. Payne also had nightmares and felt uncomfortable around men after the incident.

Nancy Farmer testified at the trial concerning another incident, which occurred in June 2004, involving defendant. Farmer testified that she did not know defendant when he approached her in his truck on 24 June 2004 as she was walking to a store to buy cigarettes. Defendant asked Farmer if she would like to "hit some crack," and Farmer responded affirmatively. Defendant and Farmer drove to a parking lot where they smoked crack. Then they drove to a store, bought two beers, and drove to a location near Pigeon River. Defendant parked the truck in a wooded area, and defendant and

Farmer smoked crack and drank beer until daybreak on 25 June 2004. Then they returned to defendant's truck. Farmer was sitting in the passenger seat when defendant told her that the truck would not start. Defendant got out of the truck and went to the passenger side where he threw a towel around Farmer's neck and pulled on the towel. Farmer struggled and tried to hit defendant with a stick. Defendant told her "he was going to [have sex with her], and if [she] made any noise he was going to kill [her]." Farmer managed to get away from defendant and ran toward the road. Defendant threw a rock at her, which hit her face, causing her to need seven stitches. A detective who interviewed defendant after the incident testified that defendant indicated he had expected sex and Farmer did not want to have sex, and that defendant attributed the incident to "drugs, man, that's all it was. I wasn't in my right mind."

---

**[1]** Defendant raises four issues on appeal. First, defendant argues that the trial court erred in its instructions to the jury on the kidnapping charge because it improperly · defined the offense. When the court instructed the jury on the element of serious injury for first degree kidnapping, the court stated, over defendant's objection: "Serious injury is defined as injury that causes great pain and suffering. Serious injury may also be defined as mental injury where such mental injury extends for some appreciable time beyond the incidence [sic] which surrounds the crime itself." Defendant assigns error to the court's failure to instruct the jury that a serious mental injury also must be a mental injury beyond that normally experienced by other victims of the type of crime charged. *See State v. Baker*, 336 N.C. 58, 62-63, 441 S.E.2d 551, 554 (1994). Defendant's argument contravenes subsequent case law from this Court and our Supreme Court.

Defendant's argument relies on our Supreme Court's language in *Baker*, stating:

> [I]n order to prove a serious personal injury based on mental or emotional harm, the State must prove that the defendant caused the harm, that it extended for some appreciable period of time beyond the incidents surrounding the crime itself, and that the harm was more than the *"res gestae"* results present in every forcible rape.

*Id.* This language from *Baker* interpreted language from an earlier Supreme Court case, *State v. Boone*, 307 N.C. 198, 205, 297 S.E.2d 585,

590 (1982), *overruled on other grounds, State v. Richmond,* 347 N.C. 412, 430, 495 S.E.2d 677, 687 (1998), which stated:

> We . . . believe that the legislature intended that ordinarily the mental injury inflicted must be more than the *res gestae* results present in every forcible rape and sexual offense. In order to support a jury finding of serious personal injury because of injury to the mind or nervous system, the State must ordinarily offer proof that such injury was not only caused by the defendant but that the injury extended for some appreciable time beyond the incidents surrounding the crime itself.

*Id.* The discrepancy in the phrasing in these cases has given rise to controversy over whether the State must separately prove that the harm to the victim was more than that normally experienced by victims of the same crime. This Court addressed the issue in *State v. Easterling*:

> We do not read *Boone* as placing an additional burden on the State to show a mental injury must be more than that normally experienced in every forcible rape in addition to showing the mental injury extended for some appreciable time, as defendant suggests. Rather, we read *Boone* as holding that if a mental injury extends for some appreciable time, it is therefore a mental injury beyond that normally experienced in every forcible rape.

119 N.C. App. 22, 40, 457 S.E.2d 913, 923-24, *disc. review denied,* 341 N.C. 422, 461 S.E.2d 762 (1995); *accord State v. Ackerman,* 144 N.C. App. 452, 460-61, 551 S.E.2d 139, 144-45, *cert. denied,* 354 N.C. 221, 554 S.E.2d 344 (2001). This Court's interpretation has been ratified by our Supreme Court in *State v. Finney,* where the Court upheld a jury instruction on serious mental injury which omitted mention of a requirement that the harm be more than that normally experienced by other victims of the same crime. *State v. Finney,* 358 N.C. 79, 89-90, 591 S.E.2d 863, 869-70 (2004). Accordingly, we hold the trial court did not err in its instruction to the jury on the element of serious injury in the present case.

**[2]** Defendant also argues that the trial court erred in admitting, over his objection, evidence of the incident between defendant and Farmer, contending there was insufficient similarity between the incident with Farmer and the current offense in violation of N.C.G.S. § 8C-1, Rule 404(b), and the evidence was unfairly prejudicial to defendant in violation of N.C.G.S. § 8C-1, Rule 403. "We review a trial court's determination to admit evidence under [Rules] 404(b) and

403, for an abuse of discretion." *State v. Summers*, 177 N.C. App. 691, 697, 629 S.E.2d 902, 907, *disc. review denied*, 360 N.C. 653, 637 S.E.2d 192 (2006).

At trial, in response to defendant's motion *in limine* to exclude Farmer's testimony, the State argued, "we believe they are similar in nature and can show intent, knowledge, scheme or plan." The trial court denied defendant's motion and allowed Farmer to testify about the incident with defendant that occurred twenty days after the incident with Payne. Evidence of a defendant's other crime, wrongs, or acts is admissible under Rule 404(b) for purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005). "When evidence of the defendant's prior sex offenses is offered for the proper purpose of showing plan, scheme, system, or design . . . the ultimate test for admissibility has two parts: First, whether the incidents are sufficiently similar; and second, whether the incidents are too remote in time." *State v. Curry*, 153 N.C. App. 260, 264, 569 S.E.2d 691, 694 (2002) (internal quotation marks omitted) (alteration in original).

Defendant contends the trial court erred in admitting Farmer's testimony because the incident with Farmer lacked sufficient similarity to the incident with Payne. However, the two incidents demonstrated many specific similarities, including that both incidents occurred in the early morning hours, defendant told both victims that his vehicle would not start, defendant told Payne he would let her live if she stopped struggling and told Farmer he would kill her if she made any noise, defendant told Payne he was "out of his head" and told a law enforcement officer that he "wasn't in [his] right mind" after the incident involving Farmer, defendant tried to restrain and silence both victims, and defendant ceased his efforts when the victims forcefully resisted his advances. In order to be sufficient, "[s]imilarities need not be bizarre or uncanny; they simply must 'tend to support a *reasonable* inference that the same person committed both the earlier and later acts.' " *State v. Murillo*, 349 N.C. 573, 593, 509 S.E.2d 752, 764 (1998) (quoting *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 891 (1991)). The similarities in the incidents support such an inference; thus, the trial court did not abuse its discretion in concluding that the similarities were sufficient to admit Farmer's testimony.

"The admissibility of evidence under Rule 404(b) is further subject to the weighing of probative value versus unfair prejudice man-

dated by [N.C. Gen. Stat. § 8C-1,] Rule 403." *Curry*, 153 N.C. App. at 265, 569 S.E.2d at 695 (internal quotation marks omitted) (alteration in original). Thus, defendant also argues that this Court must reverse the trial court's ruling because the prejudicial effect of the testimony substantially outweighed its probative value, in violation of Rule 403. N.C. Gen. ·Stat. § 8C-1, Rule 403 (2005) ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis . . . ." N.C. Gen. Stat. § 8C-1, Rule 403 official commentary. In light of the trial court's instruction to the jury limiting their consideration of the evidence to the purposes of showing motive, intent, and plan, scheme, system, or design, any tendency of the evidence to suggest decision on an improper basis is not excessive and does not outweigh the probative value of the evidence. Accordingly, defendant has not shown that the trial court abused its discretion; therefore, the trial court did not err in admitting evidence of the incident with Farmer.

Defendant ultimately argues that the trial court erred in denying his motion to dismiss the charges of first degree kidnapping and attempted second degree rape. Defendant contends that the State failed to submit substantial evidence of all of the elements of each of the crimes charged. We note:

> In ruling on a motion to dismiss at the close of evidence made pursuant to G.S. § 15A-1227, a trial court must determine whether there is substantial evidence of each essential element of the offenses charged. If, viewed in the light most favorable to the State, the evidence is such that a jury could reasonably infer that defendant is guilty, the motion must be denied.

*State v. Williams*, 154 N.C. App. 176, 178, 571 S.E.2d 619, 620-21 (2002) (citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995).

[3] With regard to the charge of kidnapping, defendant argues that the State failed to present substantial evidence of the required element that the restraint be a separate complete act independent of and apart from the attempted second degree rape. "It is self-evident that certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim." *State v. Fulcher*, 294

N.C. 503, 523, 243 S.E.2d 338, 351 (1978). To support a conviction on charges of both kidnapping and attempted rape, "the restraint, which constitutes the kidnapping, [must be] a separate, complete act, independent of and apart from the other felony." *Id.* at 524, 243 S.E.2d at 352. "[A] person cannot be convicted of kidnapping when the only evidence of restraint is that 'which is an inherent, inevitable feature' of another felony such as armed robbery." *State v. Beatty*, 347 N.C. 555, 559, 495 S.E.2d 367, 369 (1998) (quoting *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351). In determining whether the restraint is sufficient for a kidnapping charge:

> The court may consider whether the defendant's acts place the victim in greater danger than is inherent in the other offense, or subject the victim to the kind of danger and abuse that the kidnapping statute was designed to prevent. The court also considers whether defendant's acts "cause additional restraint of the victim or increase the victim's helplessness and vulnerability."

*State v. Key*, 180 N.C. App. 286, 290, 636 S.E.2d 816, 820 (2006) (citations omitted), *disc. review denied*, 361 N.C. 433, 649 S.E.2d 399 (2007).

The restraint defendant used in the case before us went beyond the restraint inherent in the crime of attempted second degree rape. The evidence indicated defendant straddled Payne on the sofa, hit her, tried to pull up her tank top, and had his pants unzipped, at which time he had completed the crime of attempted second degree rape. Defendant then pulled Payne from the couch and dragged her to the kitchen, toward the door. Defendant's acts to restrain Payne while they struggled in the kitchen clearly subjected her to greater danger and vulnerability than was inherent in the attempted rape that occurred on the couch. Accordingly, the State presented substantial evidence of the restraint element, and the trial court did not err in denying the motion to dismiss the charge.

**[4]** With regard to the attempted second degree rape charge, defendant argues that the State failed to present substantial evidence of the elements of the crime.

> To obtain a conviction for attempted second-degree rape, the State must prove beyond a reasonable doubt that (1) the accused had the specific intent to commit rape; and (2) the accused committed an overt act for the purpose, which goes beyond mere preparation, but falls short of the complete offense.

*State v. Farmer*, 158 N.C. App. 699, 702, 582 S.E.2d 352, 354 (2003). Defendant contends that there was no substantial evidence of either of the required elements.

This Court has held:

> [T]he element of intent as to the offense of attempted rape is established if the evidence shows that defendant, at any time during the incident, had an intent to gratify his passion upon the victim. Intent to rape may be "proved circumstantially by inference, based upon a defendant's actions, words, dress, or demeanor."

*State v. Oxendine*, 150 N.C. App. 670, 674, 564 S.E.2d 561, 564 (2002) (citations omitted). The circumstantial evidence in this case is sufficient to create a reasonable inference of guilt, and therefore constitutes substantial evidence of defendant's intent. The evidence indicated defendant straddled Payne and tried to pull up her shirt, and his pants were unzipped. This same evidence also demonstrates defendant's overt act in furtherance of the crime; thus, the State presented substantial evidence of both elements of the crime of attempted second degree rape. The trial court did not err in granting the motion to dismiss the charge.

No error.

Judges McCULLOUGH and ELMORE concur.