**STATE v. NORMAN**

[227 N.C. App. 162 (2013)]

STATE OF NORTH CAROLINA
v.
KENNETH OLSON NORMAN

No. COA12-599

Filed 7 May 2013

1. **Rape—second-degree rape—second-degree sexual offense— sufficient evidence—use of force**

    The trial court did not err in a second-degree rape and second-degree sexual offense case by failing to dismiss the charges for insufficient evidence. There was sufficient evidence of all the elements of the charges, including defendant's use of force to overcome the victim's will.

2. **Rape—second-degree rape—lesser-included offense—attempted second-degree rape—jury instruction**

    The trial court did not err in a second-degree rape and second-degree sexual offense case by failing to submit a lesser-included offense of attempted second-degree rape. There was clear and positive evidence of intercourse between defendant and the victim.

Appeal by defendant from judgment entered 16 November 2011 by Judge Robert F. Johnson in Nash County Superior Court. Heard in the Court of Appeals 13 November 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Linda Kimbell, for the State.*

*Geoffrey W. Hosford for defendant-appellant.*

BRYANT, Judge.

Where there was sufficient evidence of force to support submitting the charges of second-degree rape and second-degree sexual offense to the jury, the trial court did not err in denying defendant's motion to dismiss. Where there was clear and positive evidence of intercourse between defendant and the victim, the trial court did not err in failing to submit a lesser included offense of attempted second-degree rape.

**STATE v. NORMAN**

[227 N.C. App. 162 (2013)]

On 14 December 2009, defendant was indicted on charges of one count of second-degree rape and one count of second-degree sexual offense in Nash County Superior Court. A trial commenced during the Nash County Criminal Court Term beginning 14 November 2011, the Honorable Robert F. Johnson, Judge presiding.

The evidence presented at trial tended to show that the victim, a twenty-five year old woman at the time of trial, went to Club 252 in Rocky Mount around midnight on the evening of 9 October 2009. The victim had been to the club several times in the past, usually with her sisters and her friend. This night, she was alone. While the victim sat at the bar, a security guard, defendant Kenneth Norman, approached and asked where her friends were. Then he started making sexual advances toward her, which the victim rejected – dancing behind her, leaning in trying to kiss her, and continuing to attempt to kiss her even after she told him she had a girlfriend and did not date guys. At about 2:30 a.m., on the morning of 10 October, after the victim had consumed several mixed drinks, the female bartender took the victim's car keys and escorted her outside the bar. Defendant accompanied them. The bartender and defendant walked the victim around the parking lot attempting to help her sober up. The victim sat in defendant's car while the bartender went back inside. Meanwhile, defendant continued to make sexual advances toward the victim, asking if he could take her to a hotel and could he "get [her] p***y." At about 3:00 a.m., the club closed and the bartender said that she would give the victim a ride home but she had to take three or four employees home in her truck first. The victim had tried several times to reach her girlfriend to drive her home but was unsuccessful. Defendant volunteered to stay with the victim until the bartender returned.

Alone in the parking lot, defendant took the victim's hand and pulled her over to a swing located on the edge of the property near a wooded area at the rear end of the building. He pushed the victim down on the swing seat and told her they would wait for the bartender to return. There defendant began touching the victim in a sexual manner: kissing her, fondling her breasts, and pulling on her clothes. The victim testified that she resisted defendant by telling him no, and that she did not want him to touch her, and by struggling to make it difficult for him to kiss her or remove her clothing. The victim testified that she was crying, but she didn't want to anger defendant, knowing they were the only two people on the property. Defendant picked the victim up, pulled her pants down and pushed her down on the ground. As defendant unzipped his pants, and lay on top of her, the victim "clinch[ed] [her] legs together" and continually "scoot[ed] back away from him"; however, the victim

testified that defendant's penis entered her vagina three times. At some point, defendant put his penis in victim's mouth before she turned away. Defendant also put his mouth between her legs, and his tongue in her vagina. The victim also testified defendant digitally penetrated her anus with his finger before she pulled away. The victim's mother and sister arrived to find the victim hysterical and defendant's clothes in disarray. Law enforcement officers were called, and the victim was taken to Nash General Hospital to undergo an evaluation, including the collection of possible evidence for a rape kit.

Following the presentation of evidence, the jury returned guilty verdicts on the charges of second-degree rape and second-degree sexual offense. The trial court entered judgment in accordance with the jury verdicts and sentenced defendant to active terms of 100 to 129 months imprisonment for second-degree rape and 80 to 105 months imprisonment for second-degree sexual offense, to be served consecutively. The trial court further ordered that upon release from prison, defendant register as a sex offender and that he enroll in satellite based monitoring for his natural life. Defendant appeals.

---

On appeal, defendant raises two issues: whether the trial court erred (I) in denying his motion to dismiss the charges; and (II) in failing to instruct the jury on the lesser-included offense of attempted second-degree rape.

*I*

**[1]** Defendant first argues that the trial court erred in failing to dismiss the charges of second-degree rape and second-degree sexual offense. Defendant contends that the evidence fails to establish defendant used force to overcome the victim's will. Specifically, defendant argues that he did not threaten the victim with bodily harm, she did not resist his sexual advances, and there was no history of violence. We disagree.

> When ruling on a defendant's motion to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. This Court reviews the trial court's denial of a motion to dismiss de novo.

*State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citations

and quotations omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted).

Defendant was charged with second-degree rape and second-degree sexual offense. "A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person: (1) [b]y force and against the will of the other person . . . ." N.C. Gen. Stat. § 14-27.3 (a)(1) (2011). "A person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person: (1) [b]y force and against the will of the other person . . . ." N.C. Gen. Stat. § 14-27.5 (a)(1) (2011).

As to both charges, defendant challenges whether there was sufficient evidence to find he used force to overcome the victim's will. Defendant cites *State v. Alston*, 310 N.C. 399, 312 S.E.2d 470 (1984), for the proposition that in the absence of evidence that a defendant used force or threats to overcome the will of the victim, generalized fear is not sufficient to establish the force required to support a conviction of rape. *Id.* at 409, 312 S.E.2d at 476 (finding substantial evidence of intercourse against the victim's will but not substantial evidence of actual force or threat of force sufficient to overcome the victim's will).

Our Supreme Court later specifically limited the application of the "general fear theory" "to fact situations similar to those in *Alston*."[1]

---

1. In *Alston*, the defendant and the victim had had a prior sexual relationship for approximately six months. On the day in question, the victim wanted to break up with the defendant, but agreed to walk with him and talk with him and went to the home of a friend where she and the defendant had engaged in sexual intercourse on other occasions. The victim said although she told the defendant she was not going to have sex with him, and that she did not consent to have sex, that she nevertheless complied with the defendant and did not try to push him away during the act of intercourse. Further, sometime after the date of the nonconsensual intercourse the victim again had intercourse with the defendant as well as oral sex which the victim testified that she enjoyed. *Alston*, 310 N.C. at 400-03, 312 S.E.2d 471-73.

The Court determined that absent an explicit threat and absent circumstances that would give rise to a reasonable inference an unspoken threat was used to force unwanted sexual intercourse, the evidence was insufficient to support a conviction of rape. The Court stated that "[w]here as here the victim has engaged in a prior continuing consensual sexual relationship with the defendant, [] determining the victim's state of mind at the time of the alleged rape obviously is made more difficult." *Alston*, 310 N.C. at 407, 312 S.E.2d at 475.

*State v. Strickland*, 318 N.C. 653, 656, 351 S.E.2d 281, 283 (1987) (citation omitted). The *Strickland* Court stated that "[t]he force necessary to sustain a conviction of rape under N.C.G.S. § 14-27.3(a)(1) need not be actual physical force, but may be constructive force such as fear, fright, or coercion." *Id.* at 656, 351 S.E.2d at 282 (citations omitted).

> In [*Strickland*], not only had the victim and defendant had no prior sexual relationship, but the state submitted substantial evidence that defendant used both actual physical force and constructive force against the victim during the course of the offense. The victim testified that after defendant learned she was not feeling well, he refused to leave her premises, broke the latch off her screen door, forced his way into her home, and "grabbed [her] from behind and put his hand over [her] mouth." . . .
>
> Q. And he pulled you into the bedroom?
>
> A. He pulled me into the bedroom by my arm.
>
> Q. Did you scream or holler?
>
> A. I couldn't, I was scared of what would happen.
>
> ....
>
> Q. How did you get on the bed?
>
> A. He pushed me on the bed.
>
> Q. Did you fight with him, at the time?
>
> A. I couldn't fight with him.
>
> Q. Did he have a hold of you at that time?
>
> A. Yes, sir.
>
> Q. What happened when he pushed you onto the bed?
>
> A. He pulled my panties off and had sex with me.
>
> ....
>
> Q. Did he have power over you the entire time?
>
> A. Yes, sir.
>
> . . .
>
> [The *Strickland* Court held] that the evidence [was]

sufficient to show that defendant used physical force as well as the victim's fear and fright to commit the crime.

*Id.* at 656-57, 351 S.E.2d at 283 (citations omitted).

Considering defendant's argument as to a lack of force or threat sufficient to overcome the victim's will as it relates to the conviction for second-degree rape, we note the following observation by the *Alston* Court:

> [T]he State ordinarily will be able to show the victim's lack of consent to the specific act charged only by evidence of statements or actions by the victim which were clearly communicated to the defendant and which expressly and unequivocally indicated the victim's . . . lack of consent to the particular act of intercourse.

*Alston,* 310 N.C. at 407-08, 312 S.E.2d at 475.

Here, the victim testified that while she was in the bar, defendant said "sexual things" to her: "he wanted to feel my tongue ring and . . . could we basically have sex." "I told him no[.]" Just before the bar closed, the female bartender took the victim's keys and, along with defendant, walked the victim around to help her sober up. While the bartender went to retrieve a bottle of water for the victim, defendant "kept asking me could he take me to a hotel[;] [a]sking me could he get my p\*\*\*y . . . . And I was saying no. The whole time I was saying no." After the club closed at 3:00 a.m., the bartender came out and let the victim know that she would give the victim a ride home after taking a few co-workers home, first. Defendant volunteered to stay with the victim. Defendant walked the victim to a wooden swing located at the "back end" of the club away from the club's exit door and sat her down. After the bartender left, "it was just me and him there. And he started – he put his arms around me, he started touching me and kissing on my face and on my neck. And kept on asking me to go to a hotel with him and then he started touching me inside of my shirt. And basically pulling on my clothes to the point where he pulled me up off of the swing and unbuttoned my pants."

Q. What were you doing or saying at this time?

A. I was telling him no. Stop. Why are you doing this? Why? I don't want it. I just kept on saying I don't want it . . . . [A]nd I mean, at that point, like tears were coming out of my eyes, but I mean, I wasn't trying to -- I didn't want to upset him to the point where anything – it was just me and him there, but I was just telling him no. . . . So, he pulled me up and basically just started unbutton -- undoing my

> clothes, pulled them down halfway, pushed me down on
> the ground, got on top of me, which I was holding my legs
> together and he – he really couldn't get my pants down
> passed my thighs because I was holding my legs together.
> I was clinching my legs together and I was scooting back
> away from him . . . . And he had already undid his pants and
> while he was on top of me, he started kissing on my neck,
> kissing on my breasts, my stomach, kissing in between my
> legs and the whole time, I'm pushing on him. I'm squeezing
> – I'm pushing away from him.

The victim went on to describe continuous acts of resistance throughout the sexual assault, which included penile-vaginal penetration, digital-anal penetration, as well as fellatio and cunnilingus.

The record presents evidence of force and constructive force by defendant, and statements and actions by the victim which were clearly communicated to defendant and which expressly and unequivocally indicated the victim's lack of consent to intercourse or a sexual act.[2] *See id.* (the victim's lack of consent is ordinarily shown by evidence of statements or actions clearly communicated to the defendant). Viewing the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in favor of the State, there was sufficient evidence to find that defendant used sufficient force to overcome the victim's will. *See Strickland,* 318 N.C. 653, 351 S.E.2d 281. Thus, the trial court properly denied defendant's motion to dismiss, and we overrule defendant's argument.

*II*

**[2]** Next, defendant argues that the trial court erred in failing to instruct the jury concerning the issue of defendant's guilt of the lesser-included offense of attempted second-degree rape. Specifically, defendant contends that the evidence of penetration was not "clear and positive." We disagree.

> A trial court must give instructions on all lesser-
> included offenses that are supported by the evidence,
> even in the absence of a special request for such an
> instruction; and the failure to so instruct constitutes

---

2. While defendant would have us evaluate the evidence in the light most favorable to him, our duty is to evaluate the evidence in the light most favorable to the State. *See Rose,* 339 N.C. at 192, 451 S.E.2d at 223.

reversible error that cannot be cured by a verdict finding the defendant guilty of the greater offense. . . . The trial court may refrain from submitting the lesser offense to the jury only where the evidence is clear and positive as to each element of the offense charged and no evidence supports a lesser-included offense.

*State v. Speight,* ___ N.C. App. ___, ___, 711 S.E.2d 808, 815 (2011) (citation omitted).

"A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person: (1) [b]y force and against the will of the other person . . . ." N.C.G.S. § 14-27.3(a)(1). Defendant specifically asserts that the evidence of intercourse was not "clear and positive." We look to the record.

During trial, the victim gave the following testimony about the rape:

And so, I'm scooting on this – on the ground away from him and he's still forcing himself on me. And – and then he – I felt his penis and – . . . [H]e was on top of me and he was just pushing and pushing but my legs were clinching, so it was just hard – it was just – but eventually, he did get his penis in for a short while and I would say it was – it was in and out maybe three times . . . .

After the rape, the victim's mother and sister arrived to pick her up. The victim testified that she was crying hysterically and that she told her sister exactly what happened. Law enforcement arrived shortly thereafter and transported the victim to Nash General Hospital.

At trial, a sexual assault nurse examiner (SANE) working for Nash Healthcare Systems was received as an expert in the field of sexual assault examination and testified to her examination of the victim. On voir dire, the SANE nurse testified that as part of the documentation typically generated by a SANE nurse in completing a rape kit, she asked the victim specifically what happened and then wrote down the victim's statement in the victim's words as she was saying it. Before the jury, the SANE nurse was asked to read the words that the victim told her during the course of her rape kit evaluation as corroboration of the victim's testimony. In pertinent part, the SANE nurse read the following into the record:

At the swing, he stood me up and unbuckled my pants and pushed me on the ground. He pulled my shirt up and started kissing me all over. I told him no and I – I told him

no and I -- excuse me. I told him no and I told him to give me my phone because he took my phone from me. I was kicking because he tried to pull my pants all the way off and my shoes off, but I wouldn't let him. He put his finger in my booty hole. He did get my pants down some more, but not all the way down. That is when he put his penis in my vagina again.

We hold the record reflects clear and positive evidence that defendant's penis penetrated the victim's vagina; therefore, defendant was not entitled to an instruction on attempted second-degree rape. Accordingly, defendant's argument is overruled.

No error.

Judges McGEE and ERVIN concur.