STATE v. BELL

[227 N.C. App. 339 (2013)]

———

STATE OF NORTH CAROLINA
v.
MARIO BELL, Defendant

No. COA12-1514

Filed 21 May 2013

**1. Robbery—dangerous weapon—evidence—gun dangerous weapon**

The trial court properly denied defendant's motion to dismiss the charge of robbery with a dangerous weapon. Although there was evidence that the gun used by defendant was unloaded, there was evidence that defendant used a dangerous weapon to take money from the victim.

**2. Robbery—dangerous weapon—jury instruction—weapon displayed**

The trial court did not err in a robbery with a dangerous weapon case by failing to instruct the jury on footnote six of element seven of the jury instructions. The evidence showed that defendant did display and threaten to use the weapon by pointing it at the victim; thus, the "mere possession of the firearm" was not an issue in the case.

**3. Robbery—dangerous weapon—jury instructions—not misleading**

The trial court's instructions in a robbery with a dangerous weapon case were not erroneous as there was no reasonable cause to believe the jury was misled or misinformed by them.

**4. Evidence—victim impact testimony—not prejudicial**

The trial court did not commit prejudicial error in a robbery with a dangerous weapon case by allowing the State to present victim

impact testimony at trial. Even assuming *arguendo* that the testimony was inadmissible as victim impact testimony, the evidence did not prejudice defendant.

Appeal by defendant from judgment entered on or about 25 July 2012 by Judge James U. Downs in Superior Court, Rutherford County. Heard in the Court of Appeals 11 April 2013.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Joseph L. Hyde, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender John F. Carella, for defendant-appellant.*

STROUD, Judge.

Defendant appeals judgment convicting him of robbery with a dangerous weapon. For the following reasons, we find no error.

## I. Background

During defendant's trial, defendant testified that on 13 October 2011 he took a gun from his grandfather's house and unloaded it, leaving the bullets in his car. Defendant then took the gun and walked into Bostic Insurance. Ms. Christine Yount, owner of Bostic Insurance, testified that defendant came into her office, pointed a gun at her, and demanded money; Ms. Yount gave defendant the money she had in her cash drawer and defendant left. Defendant further testified that upon leaving Bostic Insurance he saw the police and ran into the woods where he left his hoodie and gun and jumped off of an embankment. The police caught defendant and arrested him. A jury found defendant guilty of robbery with a dangerous weapon. The trial court sentenced defendant to 60 to 81 months imprisonment. Defendant appeals.

## II. Motion to Dismiss

Defendant first contends that "the trial court erred by denying . . . [his] motion to dismiss the charge of armed robbery with a firearm when all of the evidence showed that the firearm in question was not loaded." (Original in all caps.)

> The standard of review for a motion to dismiss is well known. A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being

the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence.

*State v. Johnson*, 203 N.C. App. 718, 724, 693 S.E.2d 145, 148 (2010) (citations and quotation marks omitted).

The elements of robbery with a dangerous weapon are: (1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened.

*State v. Gettys*, ___ N.C. App. ___, ___, 724 S.E.2d 579, 584 (2012) (citation and quotation marks omitted).

In *State v. Joyner*, the defendant made similar arguments to the one before us. 312 N.C. 779, 781-84, 324 S.E.2d 841, 843-45 (1985). Wearing a mask and carrying a rifle, the defendant in *Joyner* approached a man and demanded money; the man complied and defendant ran. *Id.* at 780-81, 324 S.E.2d at 843. The defendant later confessed to the robbery and showed the police where he had hidden the rifle. *Id.* at 781, 324 S.E.2d at 843. The police determined that because the rifle had a missing firing pin it would not fire. *Id.* The defendant was convicted of armed robbery and on appeal argued

that the State's evidence conclusively showed that the rifle he used was not loaded and did not have a firing pin at the time of the robbery. The defendant argue[d] that, this being the case, the State's evidence conclusively showed that the robbery was not committed in such manner as to endanger or threaten the life of any person.

*Id.* at 781, 324 S.E.2d at 843. The defendant further contended that due to the evidence regarding the inability of the rifle to fire the jury should only have been instructed on the crime of common law robbery. *Id.* at 784, 324 S.E.2d at 845.

Our Supreme Court explained,

In determining whether a robbery with a particular implement constitutes a violation of this section, the

determinative question is whether the evidence was sufficient to support a jury finding that a person's life was in fact endangered or threatened.

When a person commits a robbery by the use or threatened use of an implement which appears to be a firearm or other dangerous weapon, the law presumes, in the absence of any evidence to the contrary, that the instrument is what his conduct represents it to be—an implement endangering or threatening the life of the person being robbed. Thus, where there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon and nothing to the contrary appears in evidence, the presumption that the victim's life was endangered or threatened is mandatory. If the jury in such cases finds the basic fact (that the robbery was accomplished with what appeared to the victim to be a firearm or other dangerous weapon), the jury must find the elemental fact (that a life was endangered or threatened). This is so because, when no evidence is introduced tending to show that a life was not endangered or threatened, no issue is raised as to the nonexistence of the elemental facts and the jury may be directed to find the elemental facts if it finds the basic facts to exist beyond a reasonable doubt.

When considering the validity of a mandatory presumption, courts generally examine the presumption on its face and without regard for the facts of the particular case to determine the extent to which the basic and elemental facts coincide. Viewing the mandatory presumption under consideration here in such light, we conclude that, when no evidence to the contrary is introduced, it will be unerringly accurate in the run of cases to which it may be applied and, standing alone, will support a jury's finding that a person's life was endangered or threatened beyond a reasonable doubt. Therefore, the presumption is valid. In such cases, the trial court correctly permits the jury to consider possible verdicts of guilty of armed robbery or not guilty.

The mandatory presumption under consideration here, however, is of the type which merely requires the defendant to come forward with some evidence (or take advantage of evidence already offered by the prosecution)

> to rebut the connection between the basic and elemental facts. Therefore, when any evidence is introduced tending to show that the life of the victim was not endangered or threatened, the mandatory presumption disappears, leaving only a mere permissive inference. The permissive inference which survives permits but does not require the jury to infer the elemental fact (danger or threat to life) from the basic fact proven (robbery with what appeared to the victim to be a firearm or other dangerous weapon).

> The inference remaining being permissive, the trial court must analyze its application to the case at hand and permit the jury to make the inference only if, in light of all the evidence, there continues to be a rational connection between the basic fact proved and the elemental fact to be inferred, and the latter is more likely than not to flow from the former. Although the burden of proof beyond a reasonable doubt always remains upon a State, the defendant has the burden of demonstrating to the court the invalidity of the permissive inference as applied in his case. If the defendant makes such a showing, the trial court may not allow the inference to be made by the jury.

*Id.* at 782-84, 324 S.E.2d at 843-45 (citations, quotation marks, and ellipses omitted).

In *Joyner*, our Supreme Court went on to conclude that in that case the trial court had properly instructed on both armed robbery and common law robbery because while there was some evidence that the rifle could not fire at the time of the robbery due to the missing firing pin, the evidence also showed that the rifle was not found until six hours after the incident when defendant led the police to it and as such the defendant could have removed the firing pin after the robbery. *Id.* at 781-86, 324 S.E.2d at 843-46.

Defendant directs this Court's attention to the evidence showing that once defendant left Bostic Insurance he was almost immediately seen by the police, chased down, and quickly apprehended; the police recovered his hoodie and gun without any bullets in or around the gun; and defendant's father's girlfriend, father, and grandfather testified that they recovered bullets from defendant's car where defendant had left them after unloading the gun. Nonetheless, when "consider[ing] the evidence in the light most favorable to the State and [giving] the State . . . every reasonable inference to be drawn from that evidence[,]" *Johnson*, 203

N.C. App. at 724, 693 S.E.2d at 148, the evidence also demonstrates that defendant was aware from almost the moment he left Bostic Insurance that the police were watching him; defendant chose to flee the police; and furthermore defendant attempted to hide evidence by disposing of it in the woods. Based upon this evidence, we agree with *Joyner* that

> [a]ll of the evidence to which the defendant directs our attention, when taken together, amounted to some evidence from which the jury could but was not required to infer that the [gun] was unloaded . . . at the time of the robbery and that no life was endangered or threatened. As a result, the mandatory presumption of danger or threat to life arising from the defendant's use of what appeared to the victim to be a firearm or other dangerous weapon disappeared leaving a mere permissive inference to that effect. The result was that the jury was free to infer either that the disputed element of the offense of armed robbery did or did not exist. The trial court correctly provided for both possibilities when it properly instructed the jury that they were to consider possible verdicts of guilty of armed robbery, guilty of the lesser included offense of common law robbery and not guilty. The evidence relied upon by the defendant, however, was not so compelling as to make the use of the permissive inference of danger or threat to life inappropriate in the present case or to require the trial court to enter a directed verdict in the defendant's favor on the charge of armed robbery.

*Joyner*, 312 N.C. at 786, 324 S.E.2d at 846. Accordingly, the trial court properly denied defendant's motion to dismiss the charge of armed robbery as there was evidence defendant used a dangerous weapon to take money from Ms. Yount. *See Gettys*, ___ N.C. App. at ___, 724 S.E.2d at 584.

### III. Jury Instructions

Defendant next challenges the jury instructions. "Arguments challenging the trial court's decisions regarding jury instructions are reviewed de novo by this Court." *State v. Davis*, ___ N.C. App. ___, 738 S.E.2d 417, 419 (2013) (citation, quotation marks, and brackets omitted). We consider jury instructions

> contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. Under such a standard of review,

it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*State v. Ballard*, 193 N.C. App. 551, 559, 668 S.E.2d 78, 83 (2008) (citation omitted).

A. North Carolina Pattern Instructions

**[2]** Defendant contends that the trial court erred in failing to instruct the jury on footnote six of element seven of the jury instructions for robbery with a dangerous weapon. Element seven reads, "that the defendant obtained the property by endangering or threatening the life of [that person] [another person] with the firearm." N.C.P.I.-Crim. 217.20. Footnote six to element seven reads, "Where use of a firearm is in issue, give the following charge: 'Mere possession of the firearm does not, in itself, constitute endangering or threating the life of the victim.' *State v. Gibbons*, 303 N.C. 484 (1981)." N.C.P.I.-Crim. 217.20 n. 6. As it relates to footnote six, *State v. Gibbons* discusses whether "mere possession" of a firearm without displaying or using it during the course of a robbery will support a charge of armed robbery. *See Gibbons*, 303 N.C. 484, 488-91, 279 S.E.2d 574, 577-79 (1981). But here the evidence shows defendant did display and threaten to use the weapon by pointing it at Ms. Yount; thus, the "mere possession of the firearm" is not an issue in this case. N.C.P.I.-Crim. 217.20 n.6. Accordingly, this argument is overruled.

B. Additional Instructions

**[3]** Defendant also contends the trial court erred when it instructed the jury,

Now, members of the jury, a robbery victim; that is, one who is a victim of a robbery – more particularly an armed robbery – should not have to force the issue of whether the instrument being used actually is loaded and can shoot a bullet. In an armed robbery case, the jury may conclude that the weapon is what it appeared to the victim to be – a loaded gun. In the absence of any evidence to the contrary if, however, there is any evidence that weapon was, in fact, not what it appeared to be; that is, a loaded gun to the victim, the jury must determine what, in fact, the instrument was. It is for the jury to determine the nature of the weapon and how it was used, and that you could, but you are not required, to infer

> from the appearance of the instrument to the victim or
> alleged victim that it was a firearm or otherwise danger-
> ous weapon[,]

and erred by adding the word "otherwise" to the instructions when the trial court stated,

> or that it reasonably appeared to the alleged victim in this
> case – Ms. Yount – that a dangerous weapon was being
> used, in which case you may infer – you are not required
> to do but you may infer that the instrument was what
> the defendant's conduct represented it to be, otherwise,
> the dangerous weapon is a weapon that is likely to cause
> death or serious bodily injury[.]

Defendant contends that "[t]he court's instructions here . . . allowed the jury to ignore the overwhelming evidence that the gun was unloaded" and "the court presented the definition of dangerous weapon as if it were optional." We disagree. The trial court plainly stated that it was "for the jury to determine" whether the firearm was or was not a dangerous weapon. We have viewed the jury instructions in their entirety and con-clude that there is "no reasonable cause to believe the jury was misled or misinformed." *Ballard*, 193 N.C. App. at 559, 668 S.E.2d at 83.

### IV. Victim Impact Testimony

[4] Defendant also argues that "the trial court erred by allowing the State to present victim impact testimony at trial." (Original in all caps.) Defendant contends that "the prosecutor unabashedly pursued irrele-vant evidence of the emotional, psychological, and financial impact the crime had on [the victims]" and that the "jury instructions emphasiz[ed] the victims' perspective[.]" Defendant contends the errors "prejudiced . . . [him] and had a probable impact on the jury's verdict of guilty[.]" Even if we assume *arguendo* that the testimony of the victims went beyond what would be required to describe their experience when defendant entered Bostic Insurance with a gun and therefore would be inadmis-sible as victim impact testimony, we do not believe that this evidence prejudiced defendant. Considering the overwhelming evidence of the crime, including testimony from eyewitnesses and defendant's own tes-timony, we do not conclude that defendant was prejudiced by any state-ments regarding the victims' emotions. This argument is overruled.

### V. Conclusion

For the foregoing reasons, we find no error.

NO ERROR.

Judges ELMORE and STEELMAN concur.