An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure.*

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-723

Filed 15 October 2025

Cumberland County, No. 22CRS299040-250

STATE OF NORTH CAROLINA

v.

JOHNNY HUGHES, JR.

Appeal by Defendant from judgment entered 1 March 2024 by Judge George R. Hicks III in Cumberland County Superior Court. Heard in the Court of Appeals 2 February 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Rebecca E. Lem, for the State*
>
> *Richard Croutharmel, for the defendant-appellant.*

STADING, Judge.

Johnny Hughes, Jr. ("Defendant") appeals from the trial court's judgment entered upon a jury verdict finding him guilty of attempted second-degree forcible rape. Defendant argues the trial court erred by submitting to the jury the lesser-included offense of attempted second-degree forcible rape. For the reasons below, we hold no error.

## I. Factual and Procedural Background

In April 2023, the Cumberland County Grand Jury indicted Defendant for one count of second-degree forcible rape and attaining habitual felon status. Defendant's trial took place from 27 February through 1 March 2024. The evidence presented tended to show that the victim, Aria,[1] was twenty-three years old at the time of the incident. Aria's cousin, Alexandra, lived with Defendant and they had been in an on-and-off relationship for three years. Aria had a close relationship with Alexandra and often visited her at Defendant's home. Aria was not close to Defendant, but they talked when she had visited Alexandra.

On the evening of 6 September 2022, Aria went to Defendant's house. People had gathered in the backyard, "eating or getting high." At some point, Alexandra left for the night, but Aria stayed and hung out in the backyard. Around 3:00 a.m., Aria went inside Defendant's house to use the bathroom. Afterward, she fell asleep on a futon located near the front door.

Aria later awoke to the sound of someone banging on the window and calling Defendant's name. Initially, Aria was groggy and thought she was dreaming. According to Aria, it "felt like [Defendant] was penetrating [her]" vagina with his penis. She testified Defendant's penis was inside of her, but she could not explain

---

[1] A pseudonym is used to protect the victim's identity.

how it felt. Aria saw Defendant running towards the window with his pants down. She noticed her pants and underwear were pulled down even though they were on when she fell asleep. Also, Aria felt fluid on her inner thighs. Aria immediately pulled up her pants, ran out of the house, and got into her car.

Aria called Alexandra and said Defendant raped her. Sometime after 9:00 a.m., Aria and Alexandra called the police and went back toward Defendant's home. They parked at the end of the street and waited for law enforcement to arrive. Defendant came out of his house, yelled at them, and told them to leave. Alexandra told Defendant they had called the police. Once law enforcement arrived, officers took a statement from Aria before going to Defendant's home.

Aria went to the hospital for an examination and rape kit assessment. Morgan Needham, a nurse at the local hospital, administered the kit and obtained a statement from Aria. According to Ms. Needham's recollection, Aria stated she had fallen asleep on the couch at Defendant's home. When Aria woke up, she saw Defendant pull his penis out of her vagina. Defendant then stood up to answer the door while pulling up his pants. Aria reported to Ms. Needham that Defendant penetrated her vagina but was unsure if he had ejaculated or used a condom. Ms. Needham's physical examination revealed "there was no trauma in the vaginal area," meaning no evidence of "[b]ruising, tenderness, evidence that there was force." In Ms. Needham's "experience in the collection of a sexual assault kit," evidence of trauma in the vaginal area is not always present.

While at the hospital, Aria spoke with Sergeant Don Bell and Detective Krista Zentner of the Fayetteville Police Department. The officers collected her information to schedule an interview. On 22 September 2022, Aria went to the police department for an interview with Sergeant Bell and Detective Zentner. Aria told the officers that she went inside Defendant's house to use the bathroom and eventually fell asleep on the couch. She was awakened by the sound of someone knocking on the window and felt Defendant's penis inside of her vagina. Once awake, she saw Defendant behind her. He then backed up and walked toward the window while pulling up his pants. According to Sergeant Bell, Aria's description of the incident during the interview matched her initial report at the hospital, with no inconsistencies.

Sergeant Bell attempted to contact Defendant but was unsuccessful. In March 2023, a search warrant was issued and executed for "DNA Via Buccal Swabs from" Defendant to determine whether Defendant's DNA matched the rape kit evidence.

Kristen Crawford, a forensic scientist at the State Crime Lab, examined Aria's rape kit. Her analysis was inconclusive because the two hairs collected for the kit were unsuitable for DNA analysis. Ines Benaissa, also a scientist at the State Crime Lab, conducted the DNA analysis on Aria's rape kit and Defendant's buccal swabs. From her analysis, male DNA was detected in Aria's rape kit evidence, but there was not enough DNA present for Ms. Benaissa to generate a profile.

After the close of the State's evidence, Defendant moved to dismiss the charge of second-degree forcible rape based on insufficient evidence. The trial court denied Defendant's motion. Defendant did not present evidence.

The trial court then held a jury charge conference and proposed instructing the jury on second-degree forcible rape as well as the lesser-included offense of attempted second-degree forcible rape. Defendant's counsel seemingly objected to the attempted second-degree forcible rape instruction. Nonetheless, the trial court deemed that instruction appropriate.

During deliberations, the jury sent a note to the trial court: "Are we able to receive the transcripts of the case?" The trial court denied the jury's request. Shortly thereafter, the jury sent another note: "What do we do if we're unable to fully come to [a] conclusion." In response, the trial court noted, "[i]t's time for a break anyway," and released the jury for the day. Upon their return the following morning, the trial court provided the jury with an *Allen* charge.[2] Approximately an hour and a half later, the jury sent a third note stating that one juror no longer wished to participate in deliberations. The trial court allowed the jury to take a break and, upon their

---

[2] "The term 'Allen charge' is derived from the case of *Allen v. United States*, in which the United States Supreme Court approved the use of jury instructions that encouraged the jury to reach a verdict, if possible, after the jury requested additional instructions from the trial court." *State v. Gettys*, 219 N.C. App. 93, 101, 724 S.E.2d 579, 585–86 (2012) (citing *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154 (1896)).

return, again read an *Allen* charge. Defendant moved for a mistrial. The trial court denied his motion.

Thereafter, the jury reached a verdict finding Defendant guilty of attempted second-degree forcible rape. Defendant moved to set aside the verdict, which the trial court denied. Defendant then pleaded guilty to having attained habitual felon status. The trial court sentenced Defendant to a term of 88–166 months of imprisonment, entered a no-contact order, and ordered that he register as a sex offender for thirty years. Defendant entered his notice of appeal.

## II.    Jurisdiction

Jurisdiction over Defendant's appeal appropriately lies with this Court pursuant to N.C. Gen. Stat. § 15A-1444(a) (2023) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

## III.    Analysis

Defendant argues the trial court erred by submitting the lesser-included offense of attempted second-degree forcible rape to the jury. Specifically, Defendant maintains that the evidence of penetration established that either a rape occurred, or it did not, and there was no evidence of an attempted rape.

"[A]n appellate court reviews the trial court's decisions regarding jury instructions de novo." *State v. Richardson*, 270 N.C. App. 149, 152, 838 S.E.2d 470, 473 (2020). "Under a de novo review, the court considers the matter anew and freely

substitutes its own judgment for that of the lower tribunal." *State v. Webster*, 291 N.C. App. 392, 396, 895 S.E.2d 898, 902 (2023) (citation omitted).

"A person is guilty of second-degree forcible rape if the person engages in vaginal intercourse with another person . . . [b]y force and against the will of the other person[.]" N.C. Gen. Stat. § 14-27.22 (2023). Vaginal intercourse occurs with "[t]he slightest penetration of the female sex organ by the male sex organ." *State v. Elder*, 278 N.C. App. 493, 500, 863 S.E.2d 256, 265 (2021) (citation omitted). To "obtain a conviction for attempted second-degree rape, the State must prove beyond a reasonable doubt that (1) the accused had the specific intent to commit rape; and (2) the accused committed an overt act for the purpose, which goes beyond mere preparation, but falls short of the complete offense." *State v. Simpson*, 187 N.C. App. 424, 432, 653 S.E.2d 249, 254 (2007) (citation omitted). The element of intent for "attempted rape is established if the evidence shows that [a] defendant, at any time during the incident, had an intent to gratify his passion upon the victim." *Id.* at 433, 653 S.E.2d at 254 (citation omitted). "Intent to rape may be 'proved circumstantially by inference, based upon a defendant's actions, words, dress, or demeanor.'" *Id.* (cleaned up).

"The trial court has a duty to instruct the jury on all substantive features of the case, regardless of whether a particular instruction is requested by a party." *State v. King*, 281 N.C. App. 587, 595, 868 S.E.2d 913, 919 (2022). An instruction is appropriate when it is supported "by a reasonable view of the evidence." *Id.* (citation

omitted). The trial court must provide a lesser-included offense instruction when "the evidence at trial would permit a jury rationally to find the defendant guilty of the lesser offense and acquit him of the greater." *Webster*, 291 N.C. App. at 396, 895 S.E.2d at 902 (cleaned up); *see also State v. Liggons,* 194 N.C. App. 734, 742, 670 S.E.2d 333, 339 (2009) (cleaned up) ("A trial court must submit a lesser-included offense to the jury when, and only when, there is evidence from which the jury can find that the defendant committed the lesser-included offense."). On the other hand, a lesser-included offense instruction is not warranted when "the evidence is clear and positive as to each element of the offense charged and no evidence supports a lesser-included offense." *State v. Norman*, 227 N.C. App. 162, 169, 741 S.E.2d 683, 687 (2013) (citation omitted).

To prevail on appeal, "a defendant is required not only to show that a challenged jury instruction was erroneous, but also that such error prejudiced the defendant." *Richardson*, 270 N.C. App. at 152, 838 S.E.2d at 473 (citing N.C. Gen. Stat. § 15A-1442(4)(d) (2019)). "A defendant is prejudiced . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *Richardson*, 270 N.C. App. at 152, 838 S.E.2d at 473 (alteration in original) (quoting N.C. Gen. Stat. § 15A-1443(a) (2019)); *see also State v. Bell*, 227 N.C. App. 339, 345, 741 S.E.2d 919, 923 (2013) (citation omitted) (A prejudicial error is one which was "likely, in light of the entire charge, to mislead the jury."). Put another way, a

prejudicial error is had where "there is a 'reasonable possibility' that the outcome at trial would have been different in the event that the trial court's error had not been committed." *State v. Steen*, 376 N.C. 469, 488, 852 S.E.2d 14, 27 (2020).

Defendant maintains the trial court reversibly erred "by submitting the lesser-included offense of attempted second-degree forceable rape to the jury over [his] objection." In support of his assignment of error, Defendant maintains that *State v. McNicholas* is instructive. 322 N.C. 548, 369 S.E.2d 569 (1988). There, the defendant was convicted of first-degree rape, and our Supreme Court addressed whether the jury should have been instructed on attempted first-degree rape. *Id.* at 557, 369 S.E.2d at 574–75. The defendant argued that a statement made by the victim after the incident indicated he did not actually penetrate her but only attempted to do so. *Id.* at 558, 369 S.E.2d at 575. The Court explained that the defendant's argument stemmed from an incomplete reading of the testimony, as the statement had been extracted from a sequence of events leading to penetration, and the victim had provided a consistent account of the events. *Id.* Further, the State's evidence showed that the defendant penetrated the victim, with the only opposing evidence being the defendant's own testimony denying any sexual contact. *Id.* In *McNicholas,* the Court held that since the evidence established either a rape occurred, or it did not, "the trial court correctly refused to charge on the unsupported lesser offense of attempted first-degree rape." *Id.*

We are unpersuaded that the logic of *McNicholas* applies to this case. Unlike

*McNicholas*, the evidentiary record contains evidence sufficient to maintain the charges of second-degree forcible rape and attempt of the same. Aria's testimony alone contains statements that could support either charge. On recross-examination, Aria stated the first thing she saw was Defendant running toward the window with his pants down. Aria's pants were down but she did not know how it happened while she was asleep. When asked if Defendant had touched her, Aria responded, "I would think so, but I was asleep . . . it felt like he was penetrating me[.]" Additionally, Ms. Needham recounted, "[a]ccording to the physical exam, there was no trauma to the vaginal area." And in their testimony, Sergeant Bell and Detective Zentner recounted that Aria previously stated Defendant penetrated her.

Although Defendant maintains the evidence in this case only points to penetration occurring or not, and "there was no evidence of an attempted rape," there is sufficient evidence to maintain the charge of attempted second-degree forcible rape. *See, e.g., Simpson*, 187 N.C. App. at 433, 653 S.E.2d at 254 ("The evidence indicated defendant straddled Payne and tried to pull up her shirt, and his pants were unzipped. This same evidence also demonstrates defendant's overt act in furtherance of the crime; thus, the State presented substantial evidence of both elements of the crime of attempted second degree rape."). The trial court did not err by instructing the jury on attempted second-degree forcible rape. *See King*, 281 N.C. App. at 595, 868 S.E.2d at 919 (A jury instruction is appropriate when it is supported "by a reasonable view of the evidence."). Since the trial court's instruction was not

erroneous, we need not address whether Defendant was prejudiced by the instruction. *Richardson*, 270 N.C. App. at 152, 838 S.E.2d at 473.

## IV.    Conclusion

For the foregoing reasons, we hold the trial court did not err by submitting the lesser-included offense of attempted second-degree forcible rape to the jury.  The trial court appropriately instructed the jury on second-degree forcible rape and attempted second-degree forcible rape.  It was thus within the jury's discretion to weigh the evidence and determine whether Defendant completed the offense or only attempted to do so.  Defendant received a fair trial free from error.

NO ERROR.

Judges WOOD and GORE concur.

Report per Rule 30(e).